INTERNATIONAL & G. N. RY. CO. v.
SNEED et al. (No. 5570.)

(Court of Civil Appeals of Texas. San Antonio.
Jan. 5, 1916.)

1. APPEAL AND ERROR ☜930 — RECEIVER —
DISCHARGE — PEREMPTORY INSTRUCTION —
PRESUMPTIONS.

Where suit for wrongful death was brought
against the receiver of a railroad and afterwards
the railroad was joined as a party defendant,
the failure to give a peremptory instruction in
favor of the receiver who had been discharged
was not reversible error on appeal from a ver-
dict and judgment against the railroad alone,
since the jury will not be presumed to have been
influenced in fixing the amount of their verdict
by the supposed fact that there were two de-
fendants liable to the judgment.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. §§ 3755–3761; Dec. Dig. ☜
930.]

2. MARRIAGE ☜50—COMMON-LAW MARRIAGE
—EVIDENCE—SUFFICIENCY.

In an action against a railroad to recover
for wrongful death, where the defense as to
some beneficiaries was that they were illegiti-
mate because decedent had a common-law wife
living at the time of his marriage to their moth-
er, evidence *held* to warrant a finding that no
such common-law marriage existed.

[Ed. Note.—For other cases, see Marriage,
Cent. Dig. §§ 79–89; Dec. Dig. ☜50.]

Appeal from District Court, Bexar County;
R. B. Minor, Judge.

Action by Paralee Sneed and others
against the International & Great Northern
Railway Company. Judgment for plaintiffs,
and defendant appeals. Affirmed.

Wilson, Dabney & King, of Houston, and
Cobbs, Eskridge & Cobbs, of San Antonio, for
appellant. J. R. Norton and James Rout-
ledge, both of San Antonio, for appellees.

MOURSUND, J. This is a suit for dam-
ages alleged to have been sustained by reason
of the death of John Johnson Sneed, brought
by Paralee Sneed, alleged to be the wife of
John J. Sneed, John Roosevelt Sneed, a son
of John J. Sneed, suing by his mother, Para-
lee Sneed, as next friend, Emma Robinson,
Charles Sneed, and Jake Sneed, children of
John J. Sneed by a former wife, and Henry
Sneed and Rachall Sneed, the father and
mother of John J. Sneed. The original peti-
tion was filed on February 26, 1910, against
T. J. Freeman, receiver of the International
& Great Northern Railroad Company. On
April 5, 1913, plaintiffs by amended petition
made the International & Great Northern
Railway Company a party defendant. Dur-
ing the pendency of the suit the Railway
Company settled with Paralee Sneed and
took her release in full. James Routledge
and J. R. Norton, attorneys of record for
plaintiffs, filed their plea of intervention, al-
leging that they had a contract with Paralee
Sneed, whereby she had assigned to them
one-half interest in her cause of action; that
defendants had notice of such contract, and
therefore they were liable to such interveners

for one-half of what the jury might find
Paralee Sneed would have been entitled to
had she not settled with the Railway Com-
pany.

The trial resulted in a verdict and judg-
ment in favor of the plaintiffs, other than
Paralee Sneed, and in favor of interveners,
the sum being apportioned among them.
Judgment was rendered upon such verdict
against the Railway Company, but the re-
ceiver having been theretofore discharged,
no judgment was rendered against him.

[1] By the first assignment of error com-
plaint is made because the court failed to
give a peremptory instruction to find in fa-
vor of the receiver. Appellant contends that
it is reasonable to suppose that the jury in
fixing the amount of its verdict took into con-
sideration the fact that there were two de-
fendants from whom the judgment could be
collected. We cannot assume that there is
any probability of jurors so far forgetting
or ignoring their plain duty as to make the
amount of their verdict depend upon the
number of defendants who would be liable
for its payment. Besides the jurors certainly
understood that Freeman only held the rail-
road in a representative capacity, and real-
ized that their verdict, if paid, would be paid
from the assets of the Railway Company.
No judgment was rendered against the re-
ceiver, and the failure to instruct the jury to
find in his favor is not such an error as
would justify the reversal of the judgment.

[2] The remaining assignments of error
complain of the judgment in so far as it
awards a recovery to John Roosevelt Sneed
and to James Routledge and J. R. Norton.
The contention is that Paralee Sneed was not
the lawful wife of John Johnson Sneed, and
therefore not entitled to recover, and that
John Roosevelt Sneed, the son of Paralee
Sneed, for the same reason could not recover.
This contention is based upon the theory that
the undisputed evidence shows that at the
time John Johnson Sneed and Paralee went
before a justice of the peace and were de-
clared husband and wife, said John Johnson
Sneed had a common-law wife. The evi-
dence shows that Sneed, after the death of
his first wife, took Ellen Armstrong into
his house, and she stayed with him from 5 to
7 years, and had two children by him. There
were only a few colored people in the town
in which they resided, and it was generally
known in the community that they were liv-
ing together as husband and wife. However,
Ellen Armstrong's testimony is to the effect
that she did not recognize Sneed as her hus-
band; that she was merely his housekeeper.
She supposed that Sneed claimed in public
that she was his wife, but that she never
claimed in public that she was his wife, nor
did she regard him as her husband at home.
Two of Sneed's children by his first wife tes-
tified they called her Mrs. Armstrong; that

☜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

they never heard their father claim that she was his wife. Sneed's father testified that Sneed never held her out to be his wife, and that she never claimed to be Sneed's wife that the witness knew of. Ellen Armstrong also testified she stayed in Sneed's house until he went off with Paralee to get married, at which time she left; that she had no row with him about Paralee; he told her he was going off to get married, and then she left; that Sneed's children by his first wife then lived with him and Paralee; that about a month or two after he married Paralee he put up a little house for Ellen close to his mother's place, in which she resided for a while, and then moved to San Antonio. It is true that she admitted making a statement in the presence of representatives of the railroad company, after Sneed's death, to the effect that she had two children by Sneed, and that she had been his wife 10 or 12 years before such statement was made, and testified further that she told the truth then. While the parties lived together and cohabited, and their conduct was such as to lead the public to believe they were married, the evidence supports a finding that there was no agreement to take each other for husband and wife. Both parties apparently regarded the relation as one which could be terminated at will, but naturally to avoid prosecution, permitted the public to believe they were husband and wife. We conclude that the evidence was of such a character as to warrant the jury in finding that no common-law marriage had been proven by appellant.

The judgment is affirmed.