## INTERNATIONAL–GREAT NORTHERN R. CO. v. CLERK OF DISTRICT COURT OF BEXAR COUNTY, TEX., et al.

(Circuit Court of Appeals, Fifth Circuit. January 6, 1925. Rehearing Denied February 10, 1925.)

No. 4325.

**1. Receivers ⬤⟫143—After receivership proceedings terminated, plaintiff in state court held authorized to make purchaser a party.**

Where, pending suit in state court against receiver of railroad, road was sold and receiver discharged, held, that under Rev. St. Tex. arts. 6624, 6625, plaintiffs in state court had right to make purchaser a party and carry on litigation against it, though federal court had reserved power to determine claims.

**2. Receivers ⬤⟫108—Railroad receivers held to take it subject to claim in suit at institution of prior receivership.**

Receivers of railroad held to take it chargeable under Rev. St. Tex. art. 6625, with satisfaction of claim on which suit was pending when prior receivership was instituted.

**3. Receivers ⬤⟫77(3)—State court held without jurisdiction to render judgment binding property subject to receivership.**

Where, pending action in state court against receiver of railroad which was being defended by purchaser from receivers who, under Rev. St. Tex. art. 6625, took subject to such claim, receivers for purchaser were appointed by federal District Court, held, state court was without jurisdiction to render judgment binding property in custody of federal court.

**4. Receivers ⬤⟫147—Allowance of judgment as claim against property held proper, though judgment was insufficient to bind property.**

Judgment rendered in state court against respondent in receivership proceedings, when correct as matter of law, held properly allowed as claim against property, though state court entering such judgment was without authority to bind property covered by receivership.

**5. Railroads ⬤⟫258—Claim held to remain charge against property in hands of purchaser, second receivers, and purchaser from them.**

Under Rev. St. Tex. arts. 6624, 6625, claim against railroad corporation and its receiver on which action was pending before receivership held to remain charge against property, as it passed from receiver to purchaser into hands of second receivers of purchaser and from them to second purchaser.

**6. Railroads ⬤⟫171(8)—Mortgagees of purchasers from receivers of railroad property held to take subject to claims against receivers.**

Where purchasers of railroad property from receiver took under Rev. St. Tex. arts. 6624, 6625, subject to claims against railroad and its receiver, mortgagees of such purchaser held bound to take notice of such claims and to take subject to them.

**7. Receivers ⬤⟫150—Admission in evidence of judgment against corporation with opportunity to purchaser of property from receivers to be heard held proper.**

In receivership proceedings against railroad, admission in evidence of judgment against respondent corporation with opportunity to purchaser from receivers to be heard as to validity of claim, held but recognition of right imposed by law on property in court's hands, and not inconsistent with decree under which it was sold.

**8. Receivers ⬤⟫149—Intervention in receivership proceedings against railroad held to disclose equitable cause of action.**

Intervention, in receivership proceedings pleading judgment of state court on claim for personal injuries arising under a prior receivership to satisfaction of which property was liable by statute, held to disclose equitable cause of action.

Appeal from the District Court of the United States for the Southern District of Texas; Joseph C. Hutcheson, Jr., Judge.

Receivership suit against the International-Great Northern Railway Company. On intervention by the Clerk of the District Court of Bexar County, Texas, and others. From a judgment for interveners, the International-Great Northern Railroad Company appeals. Judgment affirmed.

Samuel B. Dabney, of Houston, Tex. (Walter F. Woodul and J. E. Kilday, of Houston, Tex., on the brief), for appellant.

J. R. Norton, of San Antonio, Tex. (Norton & Brown, of San Antonio, Tex., on the brief), for appellees.

Before WALKER and BRYAN, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge. This is an appeal from a judgment of the lower court recognizing as a valid lien upon, and to be paid out of the property of the appellant railroad company, the amount of a judgment recovered by appellees against the receiver of the then International & Great Northern Railroad Company and the International & Great Northern Railway Com-

pany jointly in the courts of the state of Texas. A brief statement of the facts and proceedings out of which liability was held to have arisen is as follows:

On February 18, 1910, John Johnson Sneed was killed by a train of the International & Great Northern Railroad Company, while being operated by T. J. Freeman, receiver, under appointment of the Circuit Court of the United States (now the District Court) for the Northern District of Texas. A suit in damages was brought in the state court by the widow and heirs of the deceased against said receiver. On June 13, 1911, the railroad's property was sold by the receiver to the International & Great Northern Railway Company, and on September 25, 1911, said property was discharged from the possession and control of Freeman, receiver. Thereafter, and during the same year, with the said suit still pending, the purchaser, International & Great Northern Railway Company, mortgaged said property to the Central Trust Company of New York. On April 15, 1913, the International & Great Northern Railway Company was, by amended petition, made party to the suit for damages in the state court. August 10, 1914, the Central Trust Company of New York filed, in the District Court for the Southern District of Texas its bill in equity to foreclose its mortgage, and on the same date James A. Baker and Samuel Lyons were appointed receivers of the property and assets of the said railway company. On November 20, 1914, plaintiffs in the damage suit in the state court attempted to make said receivers parties thereto, but on a plea in abatement they were dismissed therefrom; and on March 15, 1915, the plaintiffs obtained judgment against Freeman, receiver of the International & Great Northern Railroad Company, and the International & Great Northern Railway Company, for the sum of $5,500, which judgment was, on March 1, 1916, affirmed by the Court of Civil Appeals for the Fourth Circuit of the State of Texas (181 S. W. 702), and became final on April 27, 1916. This judgment was approved by the auditor for the receivers, Baker & Lyons, and filed with the master in chancery in the proceeding in equity, No 49, wherein said receivers had been appointed.

The properties of the International & Great Northern Railway Company were sold under an order of the said court for the Southern District of Texas to the International-Great Northern Railroad Company, which availed itself of the provisions of articles 6624 of the Revised Statutes of Texas (quoted further on in this opinion) permitting it to use the old charter and to exercise the franchises and corporate rights of the former company, and that sale was confirmed by a decree of August 10, 1922. On August 12, 1922, the appellees filed with the master in chancery interventions upon the judgment in the state court, and said master thereafter recommended its payment in certain proportions to the several claimants or interveners, which recommendation was approved and confirmed by decree of the court, March 17, 1923. On December 5, 1923, interveners filed a motion to set aside said decree of confirmation upon the ground that the said claims had been, through mistake, entered and recognized as unsecured, and praying that they be allowed to amend by asserting a lien and privilege accorded them under articles 6624 and 6625 of the Revised Statutes of the State of Texas upon the property formerly belonging to the International & Great Northern Railway Company and now held by the International-Great Northern Railroad Company. In accordance with the prayer of this motion, the court, on January 12, 1924, set aside the master's report and its decree thereon, and after hearing on February 29, 1924, filed a memorandum opinion holding that the claims of interveners were entitled to be paid "out of the property in the hands of the International-Great Northern Railroad Company and payable by it, and a decree will be entered directing the payment of such judgment, or in default thereof, that the receivers retake the property to satisfy the same." On March 22, 1924, judgment was signed in conformity with said ruling, from which the International-Great Northern Railroad Company prosecutes this appeal.

Some 26 assignments of error to the rulings of the lower court were made; but, in discussing the case in brief, counsel for appellant has placed them under 13 separate heads or subdivisions, the substance of which we note as follows:

First. That the court erred in rendering judgment against the present railroad company because the cause of action, which is the basis of the present claim, arose during the Freeman receivership of the International & Great Northern Railroad Company in 1910, whose property was by said receiver sold to the International & Great Northern Railway Company, in 1911, under a decree which reserved to the court of

his appointment (United States Circuit Court for the Northern District of Texas, now the District Court) the power to determine and fix the rights of all claimants against said receiver, or the property administered by him; that said court was vested with the sole and exclusive jurisdiction in such matters, and the state courts, as well as the federal court for the Southern district of Texas (court below), were without jurisdiction to assess, determine, or allow any such claim against either Baker and Lyons, receivers, or the properties of the present owner, the International-Great Northern Railroad Company.

Second. That there was error in holding that the property of appellant was charged with any lien or liability under articles 6624 and 6625 of the Revised Statutes of Texas, because the cause of action accrued against the former receivership, and did not, as a matter of law, or otherwise, pass down against the Baker and Lyons receivership or the property now held by appellant.

Third. That the court further erred in attempting to charge appellant or its property with any liability for the claims of interveners, for the reason that, at the time of the rendition of the judgment in the state court, the said property was in the hands of the United States District Court through the receivers, Baker and Lyons, as against which the said state court had no power or jurisdiction to fix or impose a lien.

Fourth. That inasmuch as the property was sold by Freeman, receiver, under the decree of 1911 to the International & Great Northern Railway Company, which was a new corporation, article 6624 (covering cases where the purchasers avail themselves of the old charter and franchise) had no application to the claims against said receiver or the property conveyed, but that the conditions, at best, could be affected alone by article 6625 (where a new corporate entity is created); that other receivers having been appointed by another court for this new corporation in 1914, claims arising against the old corporation and the first receiver could not be brought within the operation of either section of said statute so as to make them a charge against the property in the hands of such subsequent receivers or the purchaser at their sale (present appellant), even though, in its order of sale, the court had attempted to impose such liability as a condition to the purchase; and that such laws being in derogation of common right, are to be strictly

construed, and, when so construed, their effect must necessarily be held to have ceased with the passing of the International & Great Northern Railway Company.

Fifth. That the present holders of the property were the beneficiaries under the mortgage of 1911, duly recorded, having acquired their rights while the property was in the hands of the International & Great Northern Railway Company, as distinguished from that of the receivers and before the said company was made party to the interveners' suit in the state court, and not having been made parties thereto, they were in no sense bound by nor could their rights be adversely affected by the judgment therein rendered.

Sixth. That the allowance of interveners' claims as a lien against the property of appellant was contrary to and beyond the terms of the order of sale to appellant.

Seventh. That the allegations of the bill of intervention did not disclose an equitable cause of action.

In order to discuss these several issues properly, we find it necessary to quote the sections of the Texas statutes as follows:

"Art. 6624 (4549) (4260) *Road, etc., Liable to be Sold for Debts.*—In case of the sale of the property and franchises of a railroad company, whether by virtue of an execution, order of sale, deed of trust, or any other power, or by a receiver acting under judgments heretofore or to be hereafter rendered by any court of competent jurisdiction the purchaser or purchasers at such sale and associates, if any, shall acquire full title to such property and franchises, with full power to maintain and operate the railroad and other property incident to it, under the restrictions imposed by law (hereafter addition of 1910); provided, however, that said purchaser or purchasers and associates, if any, shall not be deemed and taken to be the owners of the charter of the railroad company and corporators under the same, nor vested with the powers, rights, privileges and benefits of such charter ownership as if they were the original corporators of said company, unless the purchaser or purchasers and associates, if any, shall agree to take and hold said property and franchises, charged with and subject to the payment of all subsisting liabilities and claims for death and for personal injuries sustained in the operation of the railroad by the company, and by any receiver thereof, and for loss of and damage to property sustained in the operation of the railroad by the company

and by any receiver thereof, and for the current expenses of such operation, including labor, supplies and repairs; provided, that all such subsisting claims and liabilities shall have accrued within two years prior to the beginning of the receivership resulting in the sale of said property and franchises or within two years prior to the sale, if said property and franchises be sold otherwise than under receivership proceedings, unless suit was pending on such claims and liabilities when the receiver was appointed or when the sale was made, in which event claims and liabilities on which suits were so pending shall be protected hereby as though accruing within the two years; such agreement to be evidenced by an instrument in writing signed and acknowledged by said purchaser or purchasers and associates, if any, and filed in the office of the secretary of state of the state of Texas; and, provided, further, that such charter, together with the powers, rights, privileges and benefits thereof, shall pass to said purchaser or purchasers and associates, if any, subject to the terms, provisions, restrictions and limitations imposed and to be imposed by law; and provided, further, that the amount of stock and bonds which may be held against said property and franchises, after the sale thereof, as well as the manner of issuance of such stock and bonds shall be fixed, determined and regulated by the Railroad Commission of Texas at its discretion save that the total incumbrance secured by the lien on said property and franchises shall not exceed the amount allowed by article 6718 of the Revised Statutes of Texas.

"Art. 6625 (4550) *New Corporation, in Case of Sale, May be Formed, How.*—In case of any sale heretofore or hereafter made of the property and franchises of a railroad company within this state the purchaser or purchasers thereof and associates, if any, shall be entitled to form a corporation under chapter one of this title, for the purpose of acquiring, owning, maintaining and operating the road so purchased, as if such road were the road intended to be constructed by the corporation; and, when such charter has been filed, the new corporation shall have the powers and privileges then conferred by the laws of this state upon chartered railroads, including the power to construct and extend; provided, that, notwithstanding such incorporation, the property and franchises so purchased shall be charged with and subject to the payment of all subsisting liabilities and claims for

death and personal injuries sustained in the operation of the railroad by the sold-out company and by any receiver thereof, and for loss of and damage to property sustained in the operation of the railroad by the sold-out company and by any receiver thereof, and for the current expenses of such operation including labor, supplies and repairs; provided, that all such subsisting claims and liabilities shall have accrued within two years prior to the beginning of the receivership resulting in the sale of such property and franchises, or within two years prior to the sale, if said property and franchises be sold otherwise than under receivership proceedings, unless suit was pending on such claims and liabilities when the receiver was appointed, or when the sale was made; in which event claims and liabilities on which suits were so pending shall be protected hereby as though accruing within two years; and provided, that by such purchase and organization no right shall be acquired in conflict with the present Constitution and laws, in any respect, nor shall the main track of any railroad once constructed and operated be abandoned or moved; and provided, further, that the amount of stock and bonds which may be issued by said new corporation, as well as the manner of their issuance, shall be fixed, determined and regulated by the Railroad Commission of Texas at its discretion, save that the total incumbrance secured by lien on said property and franchises shall not exceed the amount allowed by article 6718 of the Revised Statutes of Texas. This and the preceding articles shall not be construed to in any wise repeal or impair the provisions of chapter 16 of this title except in so far as the same may be changed thereby." Acts of 1889, p. 19. Amended 4 S. S. 1910, p. 120.

[1] 1. There is no doubt but that when John Johnson Sneed was killed, the original corporation, International & Great Northern Railroad Company, was in the hands of and being operated by Freeman, receiver, and that the court of his appointment had the power and jurisdiction to determine the rights of all persons against him and the property in his hands; and if it had done so, in the present instance, such a judgment would have been binding upon all concerned. However, instead of adjudicating the claim arising from the death of Sneed, that court permitted its receiver to be sued thereon in the state court, and that suit was still pending when the receivership ended and for several years

thereafter. No action, conducted contradictorily with the claimants, was provoked to bring them into the receivership, but consent, tacitly at least, was given for litigating the issue in the state court. Certainly, the court in which the receivership was pending could not, by its mere ipsi dixit or a general decree, abrogate the Texas statute. After Freeman, receiver, was discharged, the purchaser of the property, International & Great Northern Railway Company, was made a party to the suit in the state court, and the litigation was carried on thereafter adversely with it in that forum. This, we think, the interveners had a right to do, because they were seeking to enforce a claim for the protection of which the Texas law charged "the property and franchise" of the purchasers as a condition to their acquisition and the granting of a new charter, with payment; hence the railway company had an interest in the subject-matter of the litigation sufficient to bring it into court. The court for the Northern district of Texas, by its final decree as hereinabove stated, turned over the property to the new corporation, approved the final account, and discharged Freeman, receiver, thereby completely divesting itself of all jurisdiction of both persons and property. It therefore had no further concern with the litigation involving the present claim. Had not the second receivership occurred, the cause, no doubt, would have gone to final judgment in the state court and the railway company or its property been made to respond thereto.

This statute having been passed in 1910, so it is asserted, expressly to reach the International & Great Northern Railroad Company, there does not appear to have been any pertinent decision on the point by the Supreme Court of Texas; but we are of the opinion that the conclusion reached above is supported by reason and logic.

[2, 3] 2. We think the appellant is correct in the contention that the sale of Freeman, receiver, to the International & Great Northern Railway Company was governed by article 6625 of the Texas Revised Statutes, and not by 6624, for the reason that it was a new corporation, created within the purview of the former section, and it does not seem to be seriously denied by appellant (laying aside the matter of jurisdiction and right of determination by the court appointing Freeman, receiver, and alleged want of jurisdiction in the state court) that, if the section could operate under the circumstances of this case, the property passed into the hands of the railway company burdened with the charge of responding to the claims of interveners when properly liquidated.

In view of our conclusions under paragraph 1 of the specifications of error above discussed, there can be no doubt that because of section 6625, the claims of interveners then in litigation in the state court were a subsisting, contingent liability of the International & Great Northern Railway Company's property when Baker & Lyons were appointed receivers in 1914, and that they took it as such, subject to a lawful determination thereof. It is true that the state court refused to allow them to be made parties defendant in that forum, but we know of no reason why the claims against the corporation could not be litigated and liquidated as to it, without the presence of the receivers, although the court having the custody and control of the property, of course, had the right ultimately to decide as to its effects or whether it should be recognized against said property. Cyc. vol. 34, p. 221, verbo "Receivers," and authorities cited therein.

[4] 3. As just stated, the state court could not render a judgment binding upon the federal court which, through its receivers, had control of the property; but, having the right, subject to this limitation, to determine the matter as between the corporation and the claimants, if the state court decided the matter correctly as a matter of law, there could be no reason why, when that judgment was sought to be enforced in the United States court, it could not be done and ordered to be paid out of the property in its hands.

[5] This brings us to the most important question, and that is, as to whether or not, under a fair interpretation of the Texas statute, a claim accruing against the original corporation and its receiver, passed down as a charge against the property in the hands of the second receivers and followed it to the purchaser from him, the present appellant. It is our opinion that this question should be answered in the affirmative. We think that the clear purpose of the state statute was to protect the claims of persons arising from the sources named therein by making them charges against the property in whatever hands it might be, where the liability either arose within two years before the sale privately, or under order of court, or was in litigation at the time. We do not see how it can be

effectively contended that, if the International & Great Northern Railway Company had attempted to sell the property at private sale, it could have done so in a manner to divest the rights of the interveners thereon. The statute was a public law of which every one was bound to take notice, and any such purchaser would have acquired with presumptive knowledge of the incumbrance which it bore in the hands of the seller, for the article (6624) declares that such vendees shall acquire "full title to such property and franchise," but that they "shall not be deemed and taken to be the owners of the charter of the railroad company and corporation under the same, nor vested with the powers, rights, privileges and benefits of such charter ownership as if they were the original corporators of said company, unless the purchaser or purchasers and associates, if any, shall agree to take and hold said property and franchise charged with and subject to the payment of all subsisting liabilities and claims for death and for personal injuries sustained in the operation of the railroad by the company and by any receiver thereof; * * * provided that all such subsisting claims and liabilities shall have accrued within two years prior to the beginning of the receivership resulting in the sale of said property and franchises, · or within two years prior to the sale; if said property and franchises be sold otherwise than under receivership proceedings; unless suit was pending on such claim and liabilities when the receiver was appointed or when the sale was made, in which event claims and liabilities on which suits were so pending shall be protected hereby as though accruing within the two years. * * * "

The claims of the interveners were undoubtedly pending in suit against the International & Great Northern Railway Company, and we think properly so, when the second receivers were appointed, it is true, under a liability which affected its property as distinguished from a right in personam; but nevertheless one as to which the company's property was bound. If the company, itself, could not by private sale free the property from this liability, how could the intervention of a receivership and sale under an order of court produce any different result, so long as the assertion of the right did not conflict with or prevent the prior payment of charges arising under the court's administration?

Our conclusion is that the sale under the first receivership had impressed the claims of interveners upon the property in the hands of the International & Great Northern Railway Company as a condition to its right to exercise the powers of a railroad, as a charge under article 6625 of which it could not be freed by any act of its own; and that the second receivers took it subject to that charge, which, under article 6624, followed it into the hands of the appellant as a condition precedent to its right to acquire and operate the same as a common carrier. We do not believe that this holding requires any strained or illogical construction of the statute, when it is considered, as we believe, the very spirit and purpose of the law intends, that the claim shall be imposed as a charge upon the property in the hands of any subsequent holder, no matter how often or in what manner transferred, so long as it has accrued within two years of any such sale, or "where suit was pending on such claim * * * when the receiver was appointed or when the sale was made. * * * "

[6] 4. What we have heretofore said about the purchaser being bound to take notice of the effect of the statute is equally applicable to a mortgage holder or any one else acquiring a subsequent right against the property. The very nature of the claim under the statute operated as an incumbrance upon the property which could not be divested by the corporation, its successors, or any one else representing it.

[7] 5. The ruling of the court admitting the judgment in evidence, with opportunity to appellant of being heard thereon as was done, was but a recognition of a right which the law itself imposed upon the property in its hands, and is entirely consistent with the provision of paragraph 8 of the decree under which it was sold, even though that order did not specifically mention the claims of interveners.

[8] 6. The very character of the claim and its manner of assertion in this proceeding, as appears from the above discussion, demonstrates that it was not only founded in equity, but was most properly asserted in the manner adopted in this case.

For the reasons assigned, the judgment appealed from is affirmed.