## INTERNATIONAL–GREAT NORTHERN R. CO. et al. v. BINFORD, Sheriff, et al.

(Circuit Court of Appeals, Fifth Circuit. December 1, 1925. Rehearing Denied January 19, 1926.)

No. 4602.

**1. Courts ⊜500—Claims held not to arise under receivership, so as to exclude jurisdiction of state court.**

Where, after sale of railroad property in receivership and mortgage foreclosure suit, claims were asserted against new corporation organized by purchaser, based on Rev. St. Tex. 1911, art. 6625, making property in its hands chargeable with liabilities of sold-out company, claims arose only on voluntary action of new company in procuring charter, and were not claims arising under the receivership, jurisdiction to determine which was reserved in decrees ordering and confirming sale, and hence state court had jurisdiction.

**2. Courts ⊜264(3)—Scope of ancillary jurisdiction of court having charge of receivership stated.**

Ancillary jurisdiction of court, having charge of receivership, to deal with claims in respect to property impounded, is not of such scope as to enable court to draw to itself the determination of any claim which did not come into existence until after it had surrendered custody and control by sale of the property.

**3. Judgment ⊜735—Finding in foreclosure held not conclusive against new company's liability under statute.**

Finding in receivership and mortgage foreclosure proceedings, that claims were contracted on personal credit of road, and not therefore entitled to priority as claim for current expenses, *held* not to involve a finding that such claims were not for current operating expenses within Rev. St. Tex. 1911, art. 6625, making property of sold-out company in hands of new company chargeable with liabilities for current expenses.

**4. Receivers ⊜158(1)—When equitable right of priority attaches to claim against railroad stated.**

Claim against railroad, though for money furnished to meet current operating expenses shortly before appointment of receiver, had no equitable right to priority in receivership proceeding, unless contracted with the understanding or expectation that it was to be met out of current receipts.

Appeal from the District Court of the United States for the Northern District of Texas; William H. Atwell, Judge.

Ancillary proceeding by the International-Great Northern Railroad Company and others, in receivership suit against the International & Great Northern Railroad Company, to enjoin T. A. Binford, Sheriff of Harris County, Tex., and others, from enforcing a judgment recovered in the state court. From an interlocutory decree refusing a temporary injunction, the International-Great Northern Railroad Company and others appeal. Affirmed.

Samuel B. Dabney and Sam Streetman, both of Houston, Tex., and H. G. Goggans and R. A. Ritchie, both of Dallas, Tex., for appellants.

John W. Brady, of Austin, Tex., E. B. Robertson, of Fort Worth, Tex., and Geo. L. Edwards, of Kansas City, Mo. (William T. Jones, of St. Louis, Mo., on the brief), for appellees.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. When the railroad lines and other properties of the International & Great Northern Railroad Company were placed by the court below in the hands of a receiver in 1908, in a mortgage foreclosure suit, that company owed certain debts to a bank which thereafter were assigned to one of the appellees, the Concrete Investment Company, which is herein referred to as the Concrete Company. Claims asserted by interventions in that suit that those debts were entitled to priority over the claims of mortgagees and general creditors were rejected. Thereafter in 1913 the Concrete Company brought a suit in a Texas state court against the International & Great Northern Railway Company (herein referred to as the railway company), a corporation which acquired the properties and franchises sold under a foreclosure decree in the said receivership suit; that corporation having been organized by the purchaser at that sale and his associates. That suit asserted the following claims:

First. That the properties and franchises of the sold-out company, which were so acquired by the railway company, were charged with and subject to the payment of the above-mentioned debts, which were alleged to have accrued for current expenses of operation within two years prior to the beginning of the receivership which resulted in said sale. In making this claim, article 6625 of the Revised Statutes of Texas was relied on. That statute was considered and applied by this court in International-Great Northern R. Co. v. Clerk of District Court (C. C. A.) 4 F. (2d) 19.

Second. That in the organization of the railway company a fraud was practiced on the creditors of the sold-out railroad company, including the Concrete Company, in that stockholders of the sold-out company were permitted to receive benefits in the way

of stock and securities of the railway company, by reason of their stockholdings in the sold-out company, without making any provision for the payment of the debts of the sold-out company; such benefits largely exceeding the amount of said debts owned by the Concrete Company. That suit of the Concrete Company resulted in a judgment in its favor, which was affirmed successively by a Texas Civil Court of Appeals, 201 S. W. 718, and by the Supreme Court of Texas, 263 S. W. 265.

After the last mentioned affirmance and the issue of the mandate in pursuance thereof in March, 1925, the appellants, who are, respectively, the successors of the railway company in the ownership of said properties and franchises and a mortgagee under a mortgage of said properties and franchises made by said successor, in May, 1925, by an ancillary proceeding in the above-mentioned receivership suit, sought to enjoin the enforcement of the judgment recovered by the Concrete Company. The appeal is from an interlocutory decree refusing a temporary injunction in that proceeding.

In behalf of the appellants, it was contended that the court below, by the terms of its above-mentioned decree of sale and of its decree confirming the sale, reserved jurisdiction to pass on such claims as those which were asserted in the suit brought by the Concrete Company. By the decree of sale, said properties and franchises were ordered to be sold "subject * * * to any unpaid indebtedness contracted or incurred by said defendant, railroad company, in the operation of its railroad which the court may hereafter order or decree herein to be prior or superior to the lien of said mortgage dated June 5, 1881." That decree, after providing for the giving of notice requiring holders of claims for such unpaid debts or liabilities to present the same for allowance, and that any such claims, which shall not be presented and filed within a period of three months after the publication of such notice, shall not be enforceable against the receiver, or against the property sold, or against the purchaser or his successors or assigns, provided as follows:

"Any such purchaser or purchasers and his, its or their successors and assigns shall have the right to enter his or their appearance in this cause and he or they, or any of the parties to said equity cause No. 2514, shall have the right to contest any claim, demand or allowance existing at the time of the sale and not then finally determined, and any claim or demand which may thereafter arise or be presented, which would be payable by such purchaser or his successors or assigns, or which would be chargeable against the income in the hands of the receiver or against the property purchased, and he or they may appeal from any decision relating to any such claim, demand, or allowance; * * * that on the sale of the properties ordered to be sold said properties shall be delivered to the purchaser or purchasers, his, its, or their successors and assigns, subject, however, * * * to any unpaid indebtedness or liability contracted or incurred by said defendant, railroad company, in the operation of its railroad which the court may hereafter order or decree herein to be prior or superior to the lien of said mortgage dated June 14, 1881, except such as shall be paid or satisfied out of the income of the property in the hands of the receiver herein, under orders of the court entered or to be entered herein, and subject also to such debts, claims, liens, and demands of whatsoever nature heretofore incurred or created or which may hereafter be incurred or created by the receiver under orders of the court heretofore or hereafter entered herein, and which have not been or shall not hereafter be paid by said receiver under orders of the court heretofore or hereafter entered herein, or other parties in interest herein or out of the proceeds of sale as hereinafter directed. * * * And the court reserves jurisdiction over said property, notwithstanding such deeds or delivery of possession, for the purpose of enforcing such payment. * * *

"It was further ordered, adjudged, and decreed that all questions not hereby disposed of, including the discharge of the receiver and the settlement of his accounts, and including the disposition of all claims heretofore filed herein, or hereafter to be so filed in accordance with provisions of this decree, are hereby reserved for future adjudication; and the court reserves jurisdiction of this cause and of the property affected by this decree for the purpose of final disposition of all such questions and matters; and any party to this proceeding and any claimant whose claims have been or shall be so filed herein may apply to the court for further orders and directions at the foot of this decree. And the court reserves jurisdiction, upon due hearing, and subject to full right on the part of the purchaser to contest, to charge the property in the hands of the purchaser with any liabilities which have been, or which hereafter may at any time be, adjudged against the receiver for or by reason of any act or

10 F.(2d)—32

omission of his in the administration of his trust as such receiver. Nothing in this decree contained, and no sale of the property, hereunder, shall be construed, or operate, to estop any creditor who has intervened or may hereafter intervene herein, from asserting a preference or preferred charge upon the property in the hands of the purchaser, by reason of any rights or equities which he may establish herein because of the payments of first mortgage interest in this cause or otherwise, and any and all such claims of preference or preferred charge shall be considered and adjudicated herein without prejudice by reason of said sale."

By the decree of confirmation the purchaser at the sale, Frank C. Nicodemus, Jr., was "adjudicated the purchaser of said property, premises, and franchises, subject, however, to all the terms and conditions of the decree of foreclosure."

[1] We do not think that the just quoted language indicates that the court using it had any intention to claim or reserve jurisdiction or power to deal with claims against the property sold which might come into existence after the sale and conveyance as results of acts or conduct of the purchaser at the sale, or his successor or assign. Evidently the purpose of the quoted reservations was to prevent the sale of the property from affecting the court's power to subject it to claims which would have been enforceable against it by the court if it had remained in the court's custody. The language used does not indicate that the court undertook to keep the property sold so far under its control as to render unenforceable against it by another court obligations or liabilities to which the property might become subject after it was sold, or that the court intended the reservations to inure to the benefit of any one other than holders of demands which existed prior to the sale ordered, but which had not then been passed on by the court. The question whether the court had the power to reserve to itself the determination of the validity of claims made at any time in the future, that property sold under its decree after such sale became subject to liens or charges created by acts or defaults of the purchaser at such sale, or a successor of such purchaser, need not be considered, as the record does not show that the court attempted to exercise such a power.

The suit brought by the Concrete Company did not assert a claim that the debts it held were chargeable against the property sold under the above-mentioned decree when title to that property was acquired by the purchaser at such sale. While the fact that those debts were subsisting liabilities of the sold-out company, incurred for current expenses of the operation of its railroad within two years prior to the beginning of the receivership resulting in the sale of that property, was an essential element of the first above-mentioned claim asserted in that suit, that fact did not, under the above-cited Texas statute, have the effect of charging that property with, or subjecting it to, the payment of those debts, unless it was coupled with the additional fact that the railway company was a corporation formed by the purchaser at such sale and his associates for the purpose of acquiring, owning, maintaining, and operating that property. The existence of the liability created by that statute is dependent upon a voluntary transaction occurring after such a sale of the property and franchises of the sold-out company; the parties to such transaction being chargeable with notice of the legal consequences of it. The voluntary action of the railway company in procuring its charter under that statute had the effect of an agreement on its part that said property should be charged with liabilities such as the alleged debts owned by the Concrete Company. International & G. N. Co. v. Concrete Investment Co. (Tex. Com. App.) 263 S. W. 265; International-Great Northern R. Co. v. Clerk of District Court, supra.

[2] The other claim asserted in the suit brought by the Concrete Company likewise was based on alleged transactions subsequent to the acquisition of title to the property by the purchaser at the sale under the court's decree. In our opinion that suit did not involve controversies which were ancillary and dependent on the receivership and foreclosure suit. The rule as to the ancillary jurisdiction of a court to deal with claims in respect of property there impounded was stated and applied in the case of Central Union Trust Co. of New York v. Anderson County, Tex., et al., 268 U. S. 93, 45 S. Ct. 427, 69 L. Ed. 862, April 13, 1925. The statement of that jurisdiction by no means indicates that it has such scope as to enable a court to draw to itself the determination of any claim of an interest in or a charge upon property impounded which did not come into existence until after the court surrendered custody and control and after the owner through the sale of the property under the court's decree was free to subject it to liability. The claim which in the just cited case was held to have been properly brought by an ancillary bill before the impounding court for adjudication

was of the existence of such a duty or obligation to maintain the offices and shops of the impounded railroad at a particular place as was enforceable while the railroad was in the court's custody, and after it was sold under the court's decree; the alleged duty or obligation being such a one that compliance with it could not be defeated by a mortgagee of the railroad or a purchaser of it at a mortgage foreclosure sale, the existence of the duty constituting a charge or burden on the railroad in whosesoever hands it might be. International & G. N. Ry. Co. v. Anderson County, 246 U. S. 424, 38 S. Ct. 370, 62 L. Ed. 807. Power to pass on such a claim was incident to the jurisdiction acquired in the suit to subject the impounded property to claims asserted, and to determine what, if any, existing claims affecting it should be enforceable against it after title to it was acquired by the purchaser at a sale under the court's decree. The claims sought to be brought before the court for adjudication by the proceeding instituted by the appellants were not within the ancillary jurisdiction which was invoked, as they did not accrue until after the sale under the court's decree of the property affected by them.

[3] Another contention made in behalf of the appellants is that they were entitled to relief they sought as a means of keeping an adjudication made in the receivership suit against the assignor of the Concrete Company from being deprived of due effect by the subsequent judgment in favor of the Concrete Company. The claims asserted in the above-mentioned interventions in the receivership suit were referred to a master. The master found that the debts mentioned were not entitled to priority, but that they were valid unsecured claims against the owner of the impounded railroad. The master's report of his findings and conclusions were confirmed by the court. On the grounds that such confirmation was an adjudication of facts found by the master, and that the master's findings included or involved a finding that the debts for which priority was claimed were not incurred for necessary operating expenses of the impounded railroad as alleged in the intervention petitions, it was contended that the Concrete Company was not entitled to enforce the judgment subsequently recovered by it, which was based in part on a finding that those debts accrued within two years prior to the beginning of the receivership for current expenses of the operation of the sold-out railroad company. The master's reports show that his conclu-

sions that the priority claims asserted should be rejected were based on findings that the debts in question were contracted on the personal credit of the sold-out railroad company, and do not show findings by him that those debts were not incurred for operating expenses of such railroad prior to the receivership. The intervening petitions asserted the equitable right to priority of a creditor whose debt accrued within a short time prior to the appointment of a receiver and was contracted for expenditures essentially necessary to enable the road to be operated as a continuing business, and with the expectation of the parties that it would be paid out of the current receipts of the debtor. Southern R. Co. v. Carnegie Steel Co., 176 U. S. 257, 274, 20 S. Ct. 347, 44 L. Ed. 458; Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339.

[4] It being essential to the existence of the claimed equitable right to priority that the debt was contracted with the understanding or expectation of the parties that it was to be met out of the current receipts of the debtor, if there was no such understanding or expectation, and the debt was contracted on the personal credit of the debtor, it is not entitled to priority, though it was for money furnished to meet current operating expenses shortly before the appointment of a receiver. The master's conclusion having been based on a finding of the absence of the just mentioned essential element of a valid claim to priority, his conclusion did not import or necessarily involve a finding that the debts in question were not incurred for current operating expenses of the debtor. It follows that the contention in question cannot be sustained, because an essential fact relied on to support it is not shown by the record. It is not necessary to determine whether the appellants would have been entitled to relief they sought if the judgment in favor of the Concrete Company had been in conflict with an adjudication made in the receivership suit, as the record does not show that there was such a conflict.

We conclude that the record does not show the existence of a state of facts entitling the court below to interfere with the enforcement of the judgment recovered by the Concrete Company against the railway company, and that the decree appealed from was not erroneous. Grounds other than those above stated were urged in argument in support of that conclusion. We deem it unnecessary to pass on such other grounds.

The decree is affirmed.