## CENTRAL UNION TRUST COMPANY OF NEW YORK *v.* ANDERSON COUNTY, TEXAS, ET AL.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES, FOR THE SOUTHERN DISTRICT OF TEXAS.

No. 178.  Argued January 16, 1925.—Decided April 13, 1925.

1. An ancillary suit may be maintained by the plaintiff in the principal suit against strangers to the record to determine a controversy related to property in the custody of the court and which, in justice to the parties before the court, ought to be determined in the principal suit. P. 96.

2. A bill brought by a trustee for railway bond holders against the railway, a county, a city, state officials and citizens to enjoin further assertion of claims that the general offices, shops, and round houses of the railway must be kept at the city; *held,* within the jurisdiction of the District Court as ancillary to and dependent on a pending suit brought by the trustee against the railway to foreclose the mortgage. *Id.*

Reversed.

APPEAL from a decree of the District Court dismissing a bill for want of jurisdiction.

*Mr. S. B. Dabney* and *Mr. H. M. Garwood,* for appellant, submitted.

*Mr. Nelson Phillips,* with whom *Messrs. Murphy W. Townsend, A. G. Greenwood,* and *A. M. Barton* were on the brief, for appellees.

MR. JUSTICE BUTLER delivered the opinion of the Court.

The complaint in this case was filed as ancillary to and dependent on a suit for the foreclosure of a mortgage on railroad properties. On the motion of defendants, the district court held that it had no jurisdiction and dismissed the cause. This is an appeal from that decree. The question of jurisdiction alone is certified. Judicial Code, § 238.

In 1911, the International & Great Northern Railway Company was organized, and acquired under mortgage foreclosure sale all the property of the International & Great Northern Railroad Company.  At the time of the purchase, the railway company made a mortgage of all its properties to appellant.  The latter brought suit in equity against the railway company to foreclose the mortgage, and, August 10, 1914, the court appointed receivers who took possession of and operated the property.  May 17, 1915, the court entered a decree of foreclosure, providing that, if the company failed to pay the mortgage debt, $12,908,461.06, with interest, the property should be sold.  Pursuant to the decree, all the property, consisting of 1106 miles of railroad, all money, claims and assets in the hands of the receiver, was sold for $5,000,000, subject to the lien of a first mortgage and other existing obligations, as well as such obligations as the court thereafter should fix.  By decree of August 10, 1922, the court confirmed the sale and directed the execution of a deed to the International-Great Northern Railroad Company.

June 5, 1922, before the sale, appellant filed this complaint.  The defendants were the railway company, Anderson County, Texas, the county judge, the clerk of the county court, the city of Palestine 'in that county, its mayor, and certain of its citizens as representatives of all similarly situated.  The complaint alleges as follows. The defendants, except the railway company, were asserting that in 1872 and 1875 contracts were made with the predecessors of the railway company which, taken with an act of the legislature of Texas of 1889, amended in 1899, operated to require the original contracting companies and all successors in title forever to maintain the general offices, shops and roundhouses at Palestine.  In 1912, the defendants had sued the railway company in the state district court and obtained a decree requiring it forever to keep its general offices, shops and roundhouses at Pales-

tine.*   Although, at the time of bringing suit, defendants had knowledge of the existence of the mortgage, they failed to make plaintiff a party to the suit.   They insist that the decree is *res adjudicata* and binding against plaintiff and any purchaser under the foreclosure sale; and they threaten, if it is not observed by the purchaser, to enforce the decree with penalties.   It is impossible to maintain the general offices, shops and roundhouses at Palestine without great loss and injury to and burden on the railroad property.   The claims of defendants,- if maintained, will cause a net loss in operating the railroad of not less than $500,000 per year, and thereby diminish the value of the property by not less than $3,000,000, and constitute a cloud and burden on the title and value of the property.   The alleged contracts of 1872 and 1875 were never made; and if made, never became binding on the successors of the corporations with whom they were made, and are not binding upon plaintiff or any purchaser under the foreclosure decree.   Defendants, without equity or right, are clouding the title and burdening the property to the great injury of plaintiff, its trust, and any purchaser of the property.   The suit is brought in aid of the principal cause and the decree of foreclosure and for the benefit of the plaintiff and any purchaser under the decree, and for the purpose of determining whether the claims of Anderson County, Palestine and its citizens are valid in law or equity.   By appropriate provisions in the decree of May 17, 1915, foreclosing the mortgage and authorizing the sale, and in the decree of August 10, 1922, confirming the sale and directing conveyance to the purchaser, the court retained jurisdiction to determine any

---

* The act above referred to is now Articles 6423, 6424 and 6425, Revised Statutes of Texas.   The substance of the statutory provisions and litigation is disclosed by the decisions in the case, which are reported, repectively, in 150 S. W. 239; 106 Texas 60; 174 S. W. 305; 246 U. S. 424.

questions affecting the title to the property or that are germane to the purpose or substance of this suit. Plaintiff prays that the court forever enjoin defendants from asserting, or in any court attempting to enforce, their claims that such offices, shops and roundhouses shall be kept at Palestine, and that it decree the railroad property to be free from the burden and cloud of such claims.

If the complaint discloses a controversy that is ancillary to and dependent on the foreclosure suit, the district court had jurisdiction. The rule permitting third persons to come into suits in federal courts to enforce their claims in respect of property there impounded is stated in *Hoffman* v. *McClelland*, 264 U. S. 552, 558: " It is settled that where in the progress of a suit in a federal court property has been drawn into the court's custody and control, third persons claiming interests in or liens upon the property may be permitted to come into that court for the purpose of setting up, protecting and enforcing their claims,— although the court could not consider or adjudicate their claims if it had not impounded the property. Power to deal with such claims is incident to the jurisdiction acquired in the suit wherein the impounding occurs, and may be invoked by a petition to intervene *pro interesse suo* or by a dependent bill. But in either case the proceeding is purely ancillary." Ancillary suits are not limited to those initiated by persons who desire to come in and have their rights determined. Such a suit may be maintained by the plaintiff in the principal suit against strangers to the record to determine a controversy having relation to the property in the custody of the court and which, in justice to the parties before the court, ought to be determined in the principal suit. See *Compton* v. *Jesup*, 68 Fed. 263, 284. Street, Fed. Eq. Pr. § 1248.

The provision of the decree of May 17, 1915, retaining jurisdiction, extended to all questions not determined and reserved the right to resell the property in case the pur-

chaser should fail to make any payment on account of purchase price within a specified time after the order requiring it. The decree of August 10, 1922, confirming the sale, retained jurisdiction over the property with reference to all claims against the railway company and to enforce payment of any judgment therefor out of the property sold. It reserved all questions relating " to suits now pending in this Court in this cause, or affecting the property above dealt with . . . for further hearing and determination . . ." In view of the reservations in these decrees, the sale and delivery of the railroad properties to the purchaser did not deprive the court of jurisdiction over the property or terminate plaintiff's right to carry on this suit. *Wabash Railroad* v. *Adelbert College,* 208 U. S. 38, 54; *Julian* v. *Central Trust Co.,* 193 U. S. 93, 111; *Smith* v. *Missouri Pacific R. Co.,* 266 Fed. 653.

Taking the allegations of the complaint to be true, the maintenance of the general offices, shops and roundhouses at Palestine burdens and restricts operation, requires great and unnecessary expenditures and correspondingly diminishes the value of the railroad. If, as asserted in the complaint, the claims and insistence of the defendants are groundless, plaintiff had a right to have the property sold free from such burdens and restrictions. The controversy has direct relation to the operation, use and value of the railroad property, and must be held to be ancillary to and dependent on the foreclosure suit. The district court had jurisdiction and should have heard and determined the merits.

*Decree reversed.*