## ST. LOUIS–SAN FRANCISCO R. CO. v. BYRNES et al.

Circuit Court of Appeals, Eighth Circuit. January 21, 1928.

Rehearing Denied with Modifications March 30, 1928.

No. 7632.

**1. Evidence ⊕43(1)—District Court can take judicial notice of its own records.**

The District Court can take judicial notice of its own records.

**2. Pleading ⊕6—Intervening petition held not defective in not alleging filing of original bill in same court.**

That intervening petition in creditor's suit in which a receiver of defendant's property was appointed did not allege the filing of the original bill in the same court was immaterial, since District Court could take judicial notice of its own records, and in doing so would have full knowledge of the original suit.

**3. Courts ⊕264(2, 5)—Ancillary equity suit may be maintained without diversity of citizenship or federal question, if to aid, enjoin, or regulate original suit, to restrain, avoid, explain, or enforce judgment therein, or to enforce claims to property in court's jurisdiction.**

A suit in equity, dependent upon a former action of which the federal court has jurisdiction, may be maintained without diversity of citizenship or a federal question, to aid, enjoin, or regulate the original suit, to restrain, avoid, explain, or enforce the judgment or decree therein, or to enforce or obtain adjudication of liens on or claims to property in the custody of the court in the original suit.

**4. Courts ⊕264(3, 5)—Court had jurisdiction of intervening petition of lessor claiming title to rails leased which court ordered receiver to sell, regardless of diversity of citizenship, as suit to avoid or explain decree or as assertion of title to property in court's exclusive control.**

Where court directed receiver appointed in creditor's suit to sell assets of defendant lumber corporation, including rails leased to its dummy railroad corporation by intervening petitioner which claimed title to rails, and order of sale recited that only the title and interest of receiver was sold, court had jurisdiction of controversy raised by intervening petition, regardless of diversity of citizenship, as an ancillary proceeding to avoid or explain decree or as an assertion of title to property in court's exclusive control.

**5. Courts ⊕264(3)—Federal equity court had ancillary jurisdiction of intervener's petition to enforce its contract with court's receiver.**

Federal equity court had ancillary jurisdiction of intervener's petition seeking enforcement of contract made by intervener with receiver appointed by federal court as result of creditor's bill, which contract made with court's approval granted receiver use of certain property under his agreement not to transfer possession thereof to any one else, and intervener

will not be compelled to go into state court and bring action of replevin to secure possession of property sold by receiver on court order, in absence of trial and determination of question between the parties as to whether receiver had any right to sell property.

**6. Courts ⟜278—Court may retain jurisdiction over property which has passed out of its physical possession.**

Court may retain jurisdiction over property which has passed out of its physical possession by sale or otherwise.

**7. Courts ⟜278—Orders or decrees need not in express words state reservation of jurisdiction over property passing from court's physical possession if it appears court did retain jurisdiction.**

It is not necessary that express words of reservation of jurisdiction be used in orders and decrees respecting property passing out of court's physical possession, if from the orders and decrees it appears that the court did in fact retain jurisdiction.

**8. Courts ⟜278—Order directing receiver to sell assets subject to lessor's rights in certain rails held to retain jurisdiction of rails, regardless of court's intent.**

Where order directed receiver appointed in creditor's suit to sell assets of defendant including certain rails leased by its dummy corporation from intervening petitioner and recited that purchasers should buy with notice of lease and take whatever right, title, and interest receiver had in property, and lease provided that lessee should return rails on termination of lease, and order confirming sale contained similar provisions, *held* that court retained jurisdiction of the rails sold regardless of whether it intended to do so.

Appeal from the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Suit by the Lima Locomotive Works against the Forked Leaf White Oak Lumber Company, in which J. W. Byrnes was appointed receiver. From a decree dismissing an intervening petition of the St. Louis-San Francisco Railroad Company, on the ground that the court had no jurisdiction to entertain it, said intervening petitioner appeals. Reversed and remanded.

Thomas W. White, of St. Louis, Mo. (S. W. Fordyce, Walter R. Mayne, and E. T. Miller, all of St. Louis, Mo., on the brief), for appellant.

J. M. Blayney, of St. Louis, Mo. (E. C. Eliot and William S. Bedal, both of St. Louis, Mo., on the brief), for appellees Current River Lumber Co. and Dwinnell.

Paul Bakewell, Jr., of St. Louis, Mo., for Byrnes.

Before KENYON and BOOTH, Circuit Judges, and MUNGER, District Judge.

KENYON, Circuit Judge. This is an appeal from a decree of the United States District Court for the Eastern District of Missouri dismissing an intervening petition of St. Louis-San Francisco Railway Company (hereafter designated the Frisco Company) on the ground that the court had no jurisdiction to entertain the same. The main suit was an ordinary creditors' bill brought by the Lima Locomotive Works against Forked Leaf White Oak Lumber Company (hereafter designated the lumber company), which asked the appointment of a receiver of all the property of the lumber company. This company filed answer, admitting the allegations of the bill, and joined in the prayer for the appointment of a receiver to take possession of its entire property and business, also asking that the court make such decrees with respect thereto as were warranted by general equitable principles, and cause all liens upon its property to be ascertained, defined, and determined.

The court appointed one Butler as receiver, and authorized him to operate the mills, stores, logging roads, railroads, and other property of defendant. Subsequently, July 9, 1923, appellee J. W. Byrnes, was appointed receiver. April 8, 1924, the receiver asked instructions from the court concerning the disposition of certain assets, among which were the rails in question here. The Salem, Winona & Southern Railroad Company leased the right of way between Winona and West Eminence, Mo., from the lumber company. It was in fact a dummy corporation owned by the lumber company. These rails had been leased by the predecessor receiver from the Frisco Company.

The court, on April 8, 1924, directed the public sale of the assets, including the rails and metal materials leased from the Frisco Company. The order of sale contained the following:

"Whatever right, title, and interest the receiver may now have or may hereafter be adjudged to have had or to have been entitled to, in and to certain rails, angle bars, and other metal material, and forming the trackage from the junction of the Salem, Winona & Southern Railroad Company and the St. Louis-San Francisco Railway Company. * * *

"The purchasers will further buy with notice of a lease from the St. Louis-San Francisco Railway Company to the former receiver herein, covering the trackage between Winona and West Eminence, Mo.

"The purchasers at such public sale will take whatever right, title, and interest the

receiver has in said property or whatever right, title, and interest he may be finally adjudged to have had in said properties, with the right in the purchasers to resist any and all claims or liens that might have been resisted by the receiver as such, so that, subject to the general rules of law and equity, the purchaser will stand in the shoes of the receiver herein, and succeed to the same title in and to the said properties against which liens are asserted that the receiver might have acquired by final adjudication thereof."

The sale was made to W. S. Dwinnell, and receiver's report thereof was filed June 9, 1924. A later report was made June 16, 1924. July 3, 1924, an order was made by the court confirming the sale of the assets of the lumber company by the receiver which order contained the following:

"The said instrument shall further convey whatever right, title, and interest the receiver may now have or may hereafter be adjudged to have had or to have been entitled to in and to the certain rails, angle bars, and other metal material forming the trackage from the junction of the Salem, Winona & Southern Railroad Company and the St. Louis-San Francisco Railway Company near Winona, Mo., and further recite that the purchaser buys with the notice of a lease from the St. Louis-San Francisco Railway Company to the former receiver herein, covering the trackage between Winona and West Eminence, Mo.

"The said instrument shall recite that the purchaser will take whatever right, title, and interest the receiver has in said property or whatever right, title, and interest he may finally be adjudged to have had in said properties, with the right in the purchaser to resist any and all claims or liens that might have been resisted by the receiver, as such, so that, subject to the general rules of law and equity, the purchaser will stand in the shoes of the receiver herein, and succeed to the same title in and to the said properties against which liens are asserted, that the receiver might have acquired by final adjudication thereof, all in accordance with the order of sale as entered herein on April 8, 1924."

September 24, 1925, being after the term at which the order confirming the sale was made, the Frisco Company filed an amended intervening petition setting out the lease made 'with the receiver, and alleging that there had been default thereunder, that the receivers had failed to pay the rent, and that petitioner had terminated said lease on the 8th day of January, 1923; that it was the duty of the said receivers under the lease to return the metal material described in the lease free on board the cars of petitioner at Winona, Mo.; that the receivers had failed so to do; that the purported sale did not confer any title or right of possession on the purchaser, Dwinnell, to said metal material; that said metal material remained the personal property of petitioner, although the possession was in the receivers; that demand had been made upon the receivers and upon Dwinnell demanding the return and delivery of the metal material free on board its tracks at Winona, Mo. The petitioner asked that the receiver be made a party defendant therein, and that Dwinnell and the Current River Lumber Company, which had purchased some interest in the property from him, be made parties defendant. Two subdivisions of said petition we set forth as follows:

"(7) That this court fully and carefully investigate into the matters and controversies hereinbefore stated as to the rights, equities, and priorities that your petitioner may have in said metal material, remove the cloud upon the title to same, enforce all legal and equitable liens and claims which your petitioner is entitled to in said material and order, and direct that said receiver Byrnes, said Dwinnell, and said Current River Lumber Company, return and deliver the said metal material to your petitioner.

* * * * * * * * * * *

"(9) That said J. W. Byrnes, receiver, W. S. Dwinnell, and said Current River Lumber Company be ordered and directed, if deemed advisable by this court, to show cause, if any they have, why they should not return to petitioner said steel rail and metal material as set forth in said contract, said order to be returnable on a day certain to be fixed by this honorable court."

September 24, 1925, the court entered an order making the receiver, Dwinnell, and the Current River Lumber Company parties to the intervention. October 30, 1925, the receiver filed answer to intervening petition. On the same date the Current River Lumber Company filed motion to dismiss the amended petition of intervention, which the court denied. March 10, 1926, Dwinnell filed a motion to dismiss the petition of intervention on a number of grounds; the chief ones being want of equity in the bill and lack of jurisdiction of the court. March 24, 1926, the Current River Lumber Company filed answer and included therein a prayer for dismissal of the petition of intervention on the ground that the court lacked jurisdiction to hear and determine the same.

July 6, 1926, the court entered an order setting aside its former order in which it had refused to dismiss on application of the Cur-

rent River Lumber Company the petition of intervention, and then granted said motion of Dwinnell to dismiss the petition of intervention. The only ground upon which the court sustained the motion, as clearly appears by the decree and by its oral opinion, was lack of jurisdiction. A part of its order is as follows:

"It is further ordered, adjudged, and decreed that the separate motions of the defendants W. S. Dwinnell and of the Current River Lumber Company to dismiss the said amended intervening petition of St. Louis-San Francisco Railway Company are sustained and the said amended intervening petition of St. Louis-San Francisco Railway Company be, *and the same hereby is, dismissed for lack of jurisdiction.*"

The jurisdictional question is the only one involved in this appeal. What we say in this opinion relates in no way to the merits of the controversy.

[1, 2] The face of the petition discloses no diversity of citizenship. A citizen of Missouri, to wit, the Frisco Company, asks a decree against the Current River Lumber Company, another citizen of Missouri, to compel delivery to petitioner of certain personal property in its possession. It appears from the records of the District Court, however, that a creditors' bill was brought by the Lima Locomotive Works against the Forked Leaf White Oak Lumber Company, as hereinbefore set forth. The bill of intervention does not allege the filing of this original bill. The District Court could take judicial notice of its own records, and in so doing would have full knowledge of the original suit. Wilson v. Calculagraph Co. (C. C. A.) 153 F. 961; The Golden Gate (C. C. A.) 286 F. 105. If the Frisco Company's petition was dependent upon or ancillary to the original suit, or if jurisdiction had been reserved by the District Court in its orders and decree confirming the receiver's sale, the court had jurisdiction, regardless of lack of diversity of citizenship. The doctrine is stated by the Supreme Court in Wabash Railroad Co. v. Adelbert College, etc., 208 U. S. 38, 54, 28 S. Ct. 182, 188 (52 L. Ed. 379), as follows:

"For the purpose of avoiding injustice which otherwise might result, a court during the continuance of its possession has, as incident thereto and as ancillary to the suit in which the possession was acquired, jurisdiction to hear and determine all questions respecting the title, the possession or the control of the property. In the courts of the United States this incidental and ancillary jurisdiction exists, although in the subordi-

nate suit there is no jurisdiction arising out of diversity of citizenship or the nature of the controversy."

See Foster's Federal Practice (4th Ed.) vol. 1, § 21; Bradshaw et al. v. Miners' Bank of Joplin et al. (C. C. A.) 81 F. 902; Krippendorf v. Hyde, 110 U. S. 276, 4 S. Ct. 27, 28 L. Ed. 145.

Does the Frisco Company's petition present a dependent or ancillary suit within the doctrines properly applicable thereto?

Bates' Federal Equity Procedure, vol. 1, p. 110, § 97, sets forth a comprehensive definition of an ancillary bill as follows:

" * * * A bill filed to continue a former litigation in the same court, or which relates to some matter already partly litigated in the same court, or which is an addition to a former litigation in the same court, by the same parties or their representatives standing in the same interest; or to obtain and secure the fruits, benefits, and advantages of the proceedings and judgment in a former suit in the same court by the same or additional parties, standing in the same interest; or to prevent a party from using the proceedings and judgment of the same court for fraudulent purposes; or to restrain a party from using a judgment to perpetrate an injustice, or obtain an inequitable advantage over other parties to the former judgment or proceeding; or to obtain any equitable relief in regard to, or connected with, or growing out of any judgment or proceeding at law rendered in the same court; or to assert any claim, right, or title to property in the custody of the court, or for the defense of any property rights, or the collection of assets of any estate being administered by the court—is an ancillary suit."

Street on Federal Equity Practice, vol. 2, § 1252 says:

"A suit cannot be maintained as an ancillary proceeding if it calls for the investigation of a new case, arising upon new facts, and new parties are made. Here the remedy must be by simple original bill; and the jurisdiction of the cause must exist independent of the jurisdiction in the former or principal cause."

And also section 1364 same volume:

"We now turn our attention to the petition of intervention pro interesse suo, formerly the most usual mode of intervention. This proceeding in equity is somewhat analogous to the trial of the right of property at law; its purpose being to enable a person whose property gets into the clutches of a court of equity in a controversy between others, to go into court and procure it or its

proceeds to be surrendered; but, as might be expected of an equitable as distinguished from a legal proceeding, the intervention pro interesse suo is marked by characteristic flexibility."

In Hoffman et al. v. McClelland, Jr., et al., 264 U. S. 552, 558, 44 S. Ct. 407, 409 (68 L. Ed. 845), the Supreme Court discusses it as follows:

"It is settled that, where in the progress of a suit in a federal court property has been drawn into the court's custody and control, third persons claiming interests in or liens upon the property may be permitted to come into that court for the purpose of setting up, protecting, and enforcing their claims, although the court could not consider or adjudicate their claims if it had not impounded the property. Power to deal with such claims is incident to the jurisdiction acquired in the suit wherein the impounding occurs, and may be invoked by a petition to intervene pro interesse suo or by a dependent bill. But in either case the proceeding is purely ancillary."

See Bates' Federal Equity Procedure, vol. 2, § 628; Hume v. City of New York (C. C. A.) 255 F. 488; Krippendorf v. Hyde, 110 U. S. 276, 4 S. Ct. 27, 28 L. Ed. 145; Central Union Trust Co. of New York v. Anderson Co., 268 U. S. 93, 45 S. Ct. 427, 69 L. Ed. 862.

[3] This court in Brun et al. v. Mann, 151 F. 145, 150, 12 L. R. A. (N. S.) 154, lays down the rules upon which a bill in equity dependent upon a former action of which the federal court had jurisdiction may be maintained, regardless of diversity of citizenship, as follows:

"Nor was the right of the complainant to invoke this jurisdiction conditioned by the existence of a federal question or of diversity of citizenship or of the amount in controversy. A bill in equity dependent upon a former action of which the federal court had jurisdiction may be maintained in the absence of either of these attributes (1) to aid, enjoin, or regulate the original suit; (2) to restrain, avoid, explain or enforce the judgment or decree therein; or (3) to enforce or obtain an adjudication of liens upon, or claims to property in the custody of the court in the original suit. Such a dependent suit is but a continuation in a court of equity of the original suit, to the end that more complete justice may be done."

[4] Does the situation presented by the petition of intervention meet any of the jurisdictional tests laid down in Brun v. Mann, supra?

The original suit was an ordinary creditors' bill, and sets forth that the lumber company operated a line of railroad running from Winona Junction to West Eminence, in Shannon county, Mo., and that the continuance of such railroad was necessary, not only to enable it to ship its own products, but also for carrying United States mail, and otherwise serving the village of West Eminence. This is the railroad using the rails and metals which the Frisco Company is seeking to recover by intervention, and which constituted part of the assets of the lumber company, for the preservation of which a receiver was asked. In the condition of the diversified claims of right to these rails and other metal material it would seem that the case presented by the Frisco Company in its petition might well be said to be connected with and in aid of the original suit, as it relates to certain assets specified in the creditors' bill and asks that the title thereto or the right to the proceeds of any sale thereof be determined by the court. Rosenbaum et al. v. Council Bluffs Ins. Co. (C. C.) 37 F. 724; Pacific R. R. Co. of Mo. v. Missouri Pacific Ry. Co., 111 U. S. 505, 4 S. Ct. 583, 28 L. Ed. 498; Raphael v. Trask, 194 U. S. 272, 24 S. Ct. 647, 48 L. Ed. 973.

Regardless of this, however, we are satisfied that there was jurisdiction in the court under the second test laid down in Brun v Mann, supra, to wit, to restrain, avoid, explain, or enforce, the orders or decrees in the original suit.

Surely the petition of intervention seeks an explanation of the orders or decrees relating to the sale of assets; reference being made therein to the lease between the Frisco Company and the receiver, in which it is provided there should be no sale without the consent of the railway company.

Appellees insist that this doctrine is applicable only where the action is brought by a party to the original suit, and cites in support thereof Street on Federal Equity Practice, vol. 2, § 1251. We do not think the doctrine laid down by Mr. Street is as broad as claimed by appellee. In volume 2, p. 751, § 1246, that author says:

"One of the most frequent occasions for the institution of ancillary proceedings is that which arises when a court acquires jurisdiction over property or is called upon to administer a fund that has in any way come into its custody. The rule is that this court alone has the authority to determine the conflicting rights of different parties to such property or fund; and if a stranger to the suit wishes to assert a right or claim to the

same, it is permissible for him to institute an ancillary proceeding in the same cause, by dependent bill or petition pro interesse suo. This is indeed the only proper mode whereby those who are not technically parties to the suit may assert their interests."

Section 1241, vol. 2 of the same work, states that suit to prevent fraudulent use of a decree is ancillary, and that a person not theretofore a party, if sufficient interest in the judgment is shown, can file an ancillary bill, citing Thompson v. McReynolds and others (D. C.) 29 F. 657, and McDonald v. Seligman et al. (C. C.) 81 F. 753, both of which cases hold that a stranger to the record claiming his interests are affected by the decree can file an ancillary bill to restrain, avoid or explain it. The classification of Mr. Street in section 1251, vol. 2, of ancillary suits into two divisions, is "in the main" and apparently is not intended to cover all ancillary suits, as is shown by the author's discussion elsewhere of ancillary suits not embraced in this classification. A bill may be ancillary as regards federal jurisdiction or in its relation to another suit, and yet be purely original in every other respect. Volume 2, Street, § 1231. The ground of jurisdiction we are now discussing is not based on possession of the res, but on the doctrine that the court which entered the decree should have jurisdiction to entertain an ancillary bill to construe, avoid, or explain it.

That strangers to the record in the original case claiming an interest in the subject-matter of the action may maintain ancillary bills to avoid or explain a decree in the main case we think is well established. In Freeman v. Howe et al., 24 How. 450, 16 L. Ed. 749, the court says that any party may file the bill whose interests are affected by the suit at law. This court, in Lang et al. v. Choctaw, Oklahoma & Gulf R. Co. et al. (C. C.A.) 160 F. 355, 360, said:

"A bill in equity dependent upon a former suit in the same court may be maintained by the purchaser under the decree or by any other party interested therein * * * to restrain, avoid, explain, or enforce the judgment or decree therein."

Cincinnati, I. & W. R. Co. v. Indianapolis Union Ry. Co. et al. (C. C. A.) 279 F. 356, cites with approval that language of this court.

The case of Cincinnati, I. & W. R. Co. v. Indianapolis Union Ry. Co. et al., supra, reached the Supreme Court (270 U. S. 107, 46 S. Ct. 221, 70 L. Ed. 490) on what is termed "jurisdictional appeals from decrees of the District Court dismissing ancillary petitions." The only questions involved there were jurisdictional ones. The District Court had held that the petition sought to be filed was in fact an original petition and not ancillary, and had dismissed the same upon the ground of want of jurisdiction. The Supreme Court reversed the case, and held that the petition was ancillary, saying (page 117 [46 S. Ct. 224]):

"It is well settled that, where a bill in equity is necessary to have a construction of an order or decree of a federal court, or to explain, enforce, or correct it, a bill of this kind may be entertained by the court entering the decree, even though the parties interested for want of diverse citizenship could not be entitled by original bill in the federal court to have the matter there litigated."

See, also, Central Trust Co. v. Benedict (C. C. A.) 78 F. 198, in which case a stranger to the record intervened in the receivership to claim the funds which were not in the possession of the receiver nor the court; also Venner v. Pennsylvania Steel Co. of N. J. et al. (D. C.) 250 F. 292, 297, where the leading cases on the subject are grouped.

The third test in Brun v. Mann, supra, is "to enforce or obtain an adjudication of liens upon, or claims to property in the custody of the court in the original suit." Street in his classification of ancillary suits, referring to the right of a stranger to the suit to come in and assert a claim of right or of title to the property or fund that is the subject of the suit, says that the jurisdiction flows from the fact that the court has that property or fund in its exclusive control. In Brun v. Mann, supra, the test laid down is not "exclusive control," but "custody" of the property. See, also, Minot v. Mastin (C. C. A.) 95 F. 734.

Appellees admit that the petition of the Frisco Company attempts to assert a title, and that, if the property to which title is asserted was in the exclusive control of the District Court at the time the bill was filed, then the action could have been maintained as an ancillary proceeding, but that jurisdiction on this ground must fail for the reason that the rails, the subject-matter of the Frisco Company's suit, and to which it asserts title, were not under the exclusive control of the District Court, and that upon confirmation of the sale the control of the court over the property terminated.

While it is not necessary to determine this question, as we find jurisdiction could be based on other grounds, we are not satisfied that the court had lost all control and custody of the property at the time the petition of in-

tervention was filed. It is to be remembered that the property claimed by the Frisco Company was not property that had come into the receivership as part of the general assets of the insolvent lumber company. It was property in the receivership by virtue of the direct contract made by the receiver with the approval of the court, which contract provided that the receiver would do nothing to extinguish the title of the railway company to the material, and would protect the Frisco Company from others taking possession of the material as against execution, claims, demands, and causes of action; that the receiver would pay to the railroad company whatever sums it might incur in the protection of the metal material by reason of the taking possession of the same by other parties and would return said rails and pay for them if not returned; further lessee agreed not to make any assignment, lease, conveyance, sale, or transfer of lessor's interest in the rails and metal material, except with the written consent of the Frisco Company.

The order of sale stated that only the right, title, and interest of the receiver in the rails was sold. Under the terms of the lease relied on in the petition of intervention, the receiver had no right, title, or interest in the rails. His obligation was to return the same or to pay for them if not returned. Unless there had been an election of remedies on the part of the Frisco Company to have compensation for the rails instead of having them returned, no title or right of possession passed to Dwinnell. The Current River Lumber Company secured no greater rights than Dwinnell. Whether such election occurred on the part of the Frisco Company is a matter going to the merits of the case, and is not before us at this time, although discussed in the briefs. The decree makes no special provision as to possession, nor does it give to the receiver in terms authority to surrender possession. If no right of possession passed to the purchaser, and if the purchaser illegally took possession, the custody of the property was still in the court and its receiver, who was merely a part of the court's machinery, and the purchaser would hold the same subject to the orders of the court and as the agent of the receiver. As we discuss this question under reservation of jurisdiction, we pursue it no further here, except to say that, under the facts pleaded by intervener, and considering the lease in connection with the orders and decree of the court, while the court does state in its opinion that the property has passed out of its possession by the sale, we are inclined to the view that the court had not deprived itself of the absolute custody of the property in question in that the purchaser bought the rails and metal material with notice that the receiver might be required by order of court to return the same to the Frisco Company.

[5] We refer to another theory of ancillary jurisdiction advanced in this case, viz. the enforcement by the court of its receivers' contracts. It is not appealing to a court of equity that a party making a contract with a receiver, with the approval of the court, granting to such receiver the use of certain property, he agreeing not to transfer possession of the same to any one else, should be compelled to go into a state court, when a federal court still has the receivership under its control, and bring an action of replevin to secure possession of the property, where the receiver has transferred the same to a third person, in the absence of a trial and determination of the question between the parties interested as to whether the receiver had any such right. It would seem that the court having jurisdiction of the main suit where said property was part of the subject-matter would have inherent equitable jurisdiction to compel the receiver to perform his obligations, and of course in so doing would have to determine what the obligations were. This question certainly should furnish ground for ancillary jurisdiction of the intervener's petition, which asks to enforce a contract made by it with the receiver appointed as a result of the creditors' bill. As said in Farmers' Loan & Trust Co. v. Burlington & S. W. Ry. Co. (C. C.) 32 F. 805, 808, by Justice Brewer:

"On the other hand, it is insisted that it is the duty of the court to see that contracts made by its orders are performed; that it ought not to remit the holder of such a contract to the remedies of lien or debt holders, but on the mere suggestion of omission or failure itself take measures to secure performance, and such measures as will most certainly and promptly secure it. In other words, it owes to the holders of its contracts, not the duty merely of providing a forum in which such holders may enforce performance; it owes performance. * * * The court should be chary of promise, but eager of performance; careful not to burden property in its possession with obligations, and equally careful to see that every obligation is discharged before that possession is finally surrendered."

We quote on this subject from Farmers' Loan & Trust Co. v. Eaton et al. (C. C. A.) 114 F. 14, 16:

"And no reason occurs to us why a judicial tribunal which has power to authorize a receiver to enter into a contract should be exempt from the rule which obtains as between individuals. If anything, it would seem that courts ought to be more scrupulous in keeping their engagements, and more ready than private individuals to award damages, when, in the exercise of their powers, they find it necessary to violate agreements which they have unwittingly made through their receivers."

Was there reservation of jurisdiction in the court's orders with relation to the sale of assets?

[6] Our previous discussion of the custody and control of the property by the court bears upon this proposition also. It is without question that jurisdiction over property that has passed out of the physical possession of the court by sale or otherwise may be retained by the court. Cincinnati, I. & W. R. Co. v. Indianapolis Union Ry. Co. (C. C. A.) 279 F. 356; Julian v. Central Trust Co., 193 U. S. 93, 24 S. Ct. 399, 48 L. Ed. 629; Wabash Railroad v. Adelbert College, 208 U. S. 38, 28 S. Ct. 182, 52 L. Ed. 379; Central Union Trust Co. of New York v. Anderson County, 268 U. S. 93, 45 S. Ct. 427, 69 L. Ed. 862.

[7] While ordinarily words are used to retain jurisdiction such as "reserve jurisdiction," "lawfully to apply for orders," "at the foot of the decree," "retain jurisdiction," etc.; it is not necessary that express words be used if from the orders and decrees in connection with the subject-matter it appears that the court did in fact retain jurisdiction.

[8] The order of sale relative to the sale of the assets of the lumber company provides that:

"The purchasers will further buy with notice of a lease from the St. Louis-San Francisco Railway Company to the former receiver herein, covering the trackage between Winona and West Eminence, Mo.

"The purchasers at such public sale will take whatever right, title, and interest the receiver has in said property or whatever right, title, and interest he may be finally adjudged to have had in said properties, with the right in the purchasers to resist any and all claims or liens that might have been resisted by the receiver as such, so that subject to the general rules of law and equity, the purchaser will stand in the shoes of the receiver herein, and succeed to the same title in and to the said properties against which liens are asserted, that the receiver might have acquired by final adjudication thereof."

The lease between the receiver and the Frisco Company provides:

"At the termination of this agreement in any manner, lessee covenants and agrees that lessee will return said rail and other metal material to railway company, free on board cars of railway company, on the railroad track of railway company at Winona, Mo., in as good condition as said rail and other metal material were at the time lessee received the same, excepting only the results of usual and ordinary wear and tear."

The order confirming the sale provides:

"The said instrument shall recite that the purchaser will take whatever right, title, and interest the receiver has in said property or whatever right, title, and interest he may finally be adjudged to have had in said properties, with the right in the purchaser to resist any and all claims or liens that might have been resisted by the receiver, as such, so that subject to the general rules of law and equity, the purchaser will stand in the shoes of the receiver herein and succeed to the same title in and to the said properties against which liens are asserted, that the receiver might have acquired by final adjudication thereof, all in accordance with the order of sale as entered herein on April 8th, 1924."

The court had authorized the making of the lease between the Frisco Company and the receiver. If the purchaser stood "in the shoes of the receiver"; and if the rights of the purchaser were subject to "final adjudication"; if the purchaser succeeded to the "same title" as the receiver to the property; if the purchaser bought with notice of a lease of the Frisco Company and with the right "to resist any and all claims or liens that might have been resisted by the receiver, as such"; and if provision was made for final adjudication of such claims—it certainly must mean that there were matters to be further considered, and that such "final adjudication" was to be, not by some other court, but by the very court which had appointed the receiver and which had control of his actions.

The lease, orders, or decrees must be read and construed together, and, when this is done, it seems to us that jurisdiction was reserved in the court to make further adjudication with reference to the property claimed by the Frisco Company, as it was recognized therein that the contract of lease with the Frisco Company was still in force, and that the rights of the parties were subject to final adjudication, and that the purchaser stood in the shoes of the receiver. The court perhaps did not intend to reserve jurisdiction,

but we think it did. The situation presented to the court was a complicated, troublesome, and aggravated one. The intervener may have been in no position to sustain its claimed rights, and the court may have intended that such rights of the Frisco Company should be asserted in some other forum, but we do not think a court can wash its hands of jurisdiction in this way. The court could have cited in the Frisco Company by an order to show cause, and could have drawn to itself "all disputes as to liens and other rights upon or pertaining to such property." Mississippi Valley Trust Co. v. Railway Steel Springs Co. et al. (C. C. A.) 258 F. 346, 355.

There is much discussion in the briefs on the merits of the case, viz., as to whether the Frisco Company made an election of remedies in bringing suit against the Surety Company for the agreed price of the rails in case of failure to return them, whether it had been guilty of laches, whether any of its alleged rights could be asserted, and other serious questions which it is apparent may later be presented on a trial involving the merits of the controversy. The petition of intervention simply asked that intervener be permitted to submit its contentions to the court. We see no way in which the interests of other parties could be jeopardized if intervention were granted. Of course, a petition of intervention should not be used to convey extraneous matters into a case or to operate as a bill of review. Nor is an attack on a former decree conclusive that the suit is ancillary. Here all the parties are before the court or can be brought before the court. The receivership is not terminated. The receiver is before the court as one of its officers. The purchaser becomes a party by the purchase. It does not appear what has been done with the fund received from the sale of the property. We think intervener had a right to a hearing on the merits, that the court had jurisdiction, as we have herein indicated, of the subject-matter of the petition in intervention as ancillary to the main suit upon a number of grounds, and that such jurisdiction should have been exercised.

The decree dismissing the intervening petition is reversed, and the case remanded.