267 F.2d 337
 Margaret DE KORWIN, etc., Plaintiff,
v.
FIRST NATIONAL BANK OF CHICAGO, etc., et al., Defendants.
FIRST NATIONAL BANK OF CHICAGO, as Trustee under the Will of Otto Young, Deceased, Petitioner-Appellee,
v.
Graveraet Young KAUFMAN, Respondent-Appellee, and
Karl C. Jacobs et al., Respondents (Appellants in No. 12314) and
Dr. Louis Ruttenberg et al., Respondents (Appellants in No. 12315) and
Robert S. Berson et al., Respondents (Appellants in No. 12316).
Margaret DE KORWIN etc., Plaintiff-Appellee (No. 12395)
v.
FIRST NATIONAL BANK OF CHICAGO, etc., et al., Defendants-Appellees (No. 12395).
Appeal of Oscar BENNES et al. (Appellants in No. 12395).
 Nos. 12314-12316.
 No. 12395.
 United States Court of Appeals Seventh Circuit.
 March 30, 1959.
 Rehearing Denied June 10, 1959.
 
 Hamilton Smith, Louis L. Kahn, Jack A. Diamond, Daniel M. Schuyler, Jay Stough, Joseph R. Julin, Thomas Hart Fisher, Norman Crawford, Chicago, Ill., for appellants.
 Bartlett S. Marimon, William B. McIlvaine, A. Leslie Hodson, Chicago, Ill. (Robert H. Bork, Frederick W. Temple, Howard G. Krane, Clarence E. Fox, George W. Thompson, Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., Wilson & McIlvaine, Chicago, Ill., of counsel), Charles R. Aiken, Richard F. Watt, Chicago, Ill. (Cotton, Fruchtman & Watt, Chicago, Ill., of counsel), Frank E. McDonald, A. Bradley Eben, Harold A. Smith, Chicago, Ill. (Winston, Strawn, Smith & Patterson, Chicago, Ill., of counsel), Jack I. Levy, Chicago, Ill. (Sonnenschein, Lautmann, Levinson, Rieser, Carlin & Nath, Chicago, Ill., of counsel), for appellees.
 Before DUFFY, Chief Judge, and PARKINSON and KNOCH, Circuit Judges.
 PARKINSON, Circuit Judge.
 
 
 1
 These four appeals have been consolidated in this opinion inasmuch as they emanate from the same proceeding below and, to some extent, do or may affect the interests of all parties. No. 12314 challenges the validity and seeks reversal of a protective order entered on February 20, 1958 pursuant to Rule 30(b) of the Federal Rules of Civil Procedure, 28 U.S. C.A. The appellants in No. 12315 have adopted the brief of appellants in No. 12314 and have also adopted the brief of appellants in No. 12316, in which the jurisdiction of the District Court is assailed, and which jurisdictional challenge is carried through in No. 12395, wherein a decree of May 22, 1958 is also placed under attack.
 
 
 2
 This proceeding has been pending in the District Court since 1943 when a complaint was filed to construe the will of Otto Young, deceased, and praying, inter alia, for an accounting and distribution by the trustee. It has been here on appeal involving other issues on three prior occasions, sub nom. DeKorwin v. First National Bank of Chicago, 7 Cir., 1946, 156 F.2d 858; 7 Cir., 1950, 179 F.2d 347; 7 Cir., 1956, 235 F.2d 156.
 
 
 3
 Graveraet Y. Kaufman, Jane Kaufman Harding, Juliet Graveraet Kaufman de Manio and Marie Louise Brill, four grandchildren of Otto Young, each became vested with an 1/18 share in the remainder of the trust estate administered by the petitioner, First National Bank of Chicago, as trustee under the will of Otto Young, deceased, and also with an 1/18 share, respectively, of the liquidation trust estate, under the conveyance and liquidation trust agreement of November 14, 1951.
 
 
 4
 The District Court entered a decree on December 14, 1951 pursuant to and approving a family settlement agreement and the conveyance and liquidation trust agreement of November 14, 1951 wherein its jurisdiction was continued and expressly reserved to administer the trust and, inter alia, "to supervise and direct the distribution of the income and principal of the testamentary trust estate of Otto Young, deceased, * * *."
 
 
 5
 The trust is a large one, a great portion of which consisted of real estate and lease holds which had to be managed and liquidated. Acting under the orders of the District Court herein this was done and liquidation has been completed.
 
 
 6
 After the death of the last life tenant on August 17, 1956 distribution was in order. However, prior thereto the four beneficiaries named above made various partial assignments of their respective shares in the trust estate.
 
 
 7
 On September 14, 1956 the District Court ordered the trustee to create segregated share accounts into which the shares of the four assigning grandchildren were to be made and held subject to the further order and direction of the Court. Subsequently, on October 29, 1956, the District Court ordered the trustee to file a petition listing the names of the persons claiming by way of assignment and to cause all of them to be made parties defendant thereto and, on or before June 18, 1957, to appear or plead to the trustee's petition for instructions as to the distribution of the remaining shares. The assignees live in some seven states. None of them lives in Illinois and the majority of them reside in New York.
 
 
 8
 On February 20, 1958 the District Court entered an order pursuant to Rule 30(b), Federal Rules of Civil Procedure, 28 U.S.C.A., directing the First National Bank of Chicago, as trustee of the testamentary trust estate of Otto Young, deceased, to pay to Graveraet Y. Kaufman, one of the assigning grandchildren, from funds that are here claimed by the assignees, $14,500 immediately and $1,250 monthly thereafter for his support.
 
 
 9
 On May 22, 1958 the District Court entered a decree confirming a Master's Report, dated May 7, 1958, approving the account and actions of the testamentary trustee during the period from May 26, 1916 to August 17, 1956. It approved certain sums allowed as costs of administration for fees and expenses of the trustees and their attorneys. The Court also retained jurisdiction of the segregated shares aforementioned "for the sole purpose of determining the claims and controversies between Graveraet, Juliet, Marie and Jane and the parties claiming by, through or under them as to the ownership of the segregated shares."
 
 
 10
 The three questions that are now presented to this Court are:
 
 
 11
 1. Whether the District Court has jurisdiction to adjudicate the opposing claims to the segregated shares.
 
 
 12
 2. Whether the assignees now claiming all or part of the segregated shares are bound by the decree of May 22, 1958.
 
 
 13
 3. Whether the District Court had authority to enter the protective order of February 20, 1958 under Rule 30(b) of the Federal Rules of Civil Procedure.
 
 
 14
 As a matter of convenience we will treat all three questions as if raised by all appellants without further distinction for to do otherwise would serve no purpose other than to create needless confusion.
 
 
 15
 In the matter of the District Court's jurisdiction appellants concede "that any in rem claims against property that actually is in custodia legis must be presented to the court which has the property in custody" and "recognize that it is no longer necessary for property to be in the physical possession of an officer of the Court, such as a receiver or a Clerk of the Court, in order to be in effect in custodia legis." However, they contend that an action between a trust beneficiary and the persons to whom he has assigned part or all of his interest therein is an action in personam and hence where the assignors are non-residents they can not be compelled to litigate their claims as part of the subject matter of a suit in a federal court against a trustee to construe a trust instrument, take an accounting and make distribution, absent any other basis of federal jurisdiction.
 
 
 16
 Appellees on the other hand claim that this action is in rem or quasi in rem and, therefore, where the District Court has jurisdiction over the res it necessarily follows that that Court has power to determine all claims to the res.
 
 
 17
 We agree with the appellees. When the District Court entered its decree of December 14, 1951 it took over the supervision and direction of the administration, liquidation and distribution of the trust estate.
 
 
 18
 By decree entered February 4, 1955 the District Court construed the will as empowering the trustee to sell certain specific property and on July 20, 1955 the sale of the property was approved and confirmed.
 
 
 19
 On October 13, 1955 the District Court enjoined one of the beneficiaries from further prosecution of a state court partition proceeding involving the trust property. DeKorwin v. First National Bank of Chicago, D.C.N.D.Ill., 1955, 136 F.Supp. 720. The Court there said in its reported opinion at page 723:
 
 
 20
 "As has been seen, the trust res long since was drawn into the custody of this court * * *".
 
 
 21
 We dismissed the appeal, DeKorwin v. First National Bank of Chicago, 7 Cir., 1956, 235 F.2d 156, and stated at page 157:
 
 
 22
 "Judge Igoe has supplied a chronicle of the salient events and reached conclusions which we consider unassailable."
 
 
 23
 Only the most jaundiced reading of both opinions would allow one to believe that this Court was not referring to the District Court's conclusion that the res was within its exclusive custody.
 
 
 24
 It appearing from the record that the District Court has for many years exercised complete and exclusive dominion over this trust property certainly it would be inconceivable to hold that the res is not held by the District Court in custodia legis.
 
 
 25
 Thus it necessarily follows that the District Court acquired jurisdiction in rem or quasi in rem. It must and does control the trust estate and, therefore, has jurisdiction to adjudicate all claims to the res to the exclusion of any court of co-ordinate jurisdiction in order that distribution can be made to the parties lawfully entitled thereto and the trust terminated. Farmers' Loan & Trust Co. of New York v. Lake St. Elevated Rd. Co., 1900, 177 U.S. 51, 61, 20 S. Ct. 564, 44 L.Ed. 667; Central Union Trust Co. of New York v. Anderson County, 1925, 268 U.S. 93, 96, 45 S.Ct. 427, 69 L.Ed. 862; Princess Lida of Thurn and Taxis v. Thompson, 1939, 305 U.S. 456, 466, 59 S.Ct. 275, 83 L.Ed. 285; Natural Gas Pipeline Co. v. Federal Power Commission, 7 Cir., 1942, 128 F.2d 481, 485.
 
 
 26
 Here the District Court had exclusive control and jurisdiction over the entire corpus of the trust estate, all of which is located within the Northern District of Illinois, and, therefore, the case of Mandeville v. Canterbury, 1943, 318 U.S. 47, 63 S.Ct. 472, 473, 87 L.Ed. 605, cited by and relied upon by the appellants, is inapposite because there the District Court for Northern Illinois had "not attempted to assume such jurisdiction with respect to an asserted but contested interest in land located in another state", i. e. Minnesota and Wisconsin.
 
 
 27
 Those appellants who struggle to upset the decree by attacking jurisdiction cannot by simply assuming they own impeccable and invulnerable assignments divest the trustee of moneys under its stewardship or the District Court of its power to control the trustee. To say in substance the District Court does not have these funds under its judicial control is unrealistic, if not unimaginative. But some of the numerous assignees insist they have created new and utterly different legal relations between themselves and the assignors and, therefore, are strangers to all proceedings below.
 
 
 28
 A brief look at a typical assignment made by Graveraet Y. Kaufman will dispel any doubt as to whether it would be the basis of a claim against the res or merely a personal action against Kaufman himself. One such assignment to a Phil S. Rosen reads in part as follows: "Sixth: The Assignor hereby irrevocably authorizes, empowers and directs the said First National Bank of Chicago, Illinois, Successor Trustee of the trust or trusts created by the Last Will and Testament of Otto Young, deceased, and its successors and any other person who, or corporation which, may at any time have custody of the trust or trusts so created to pay, convey, transfer and deliver to the Assignee herein, the said sum of One hundred twenty-five thousand ($125,000) dollars, and not to make any payment, conveyance, transfer or distribution to the Assignor until the said sum of One hundred twenty-five thousand ($125,000) dollars shall have been fully paid as aforesaid."
 
 
 29
 This is clearly an assignment of a portion of the res itself and points up the futility of the District Court attempting to declare and adjudicate the rights of the trustee in this matter without making the assignees parties. Undoubtedly, this is a situation of which Congress took recognition and clearly had in mind when it enacted Title 28 U.S. C.A. § 1655 and thereby empowered a district court having jurisdiction of the res to bring in and get service upon those claiming any portion of the res even if they be non-residents of the State. To hold otherwise would place the District Court in the impossible position of having to rule on the disposition of the segregated shares of the trust estate while at the same time being precluded from adjudicating the merits of the assignments made against those shares.
 
 
 30
 This record is utterly devoid of any showing that these are valid assignments or that there is any litigation on the claims pending outside the District Court. Nor have any claims from among the profusion of assignments reached the stage, for example, of judgments. No doubt well aware of this, the jurisdictional attack is moved back further and the argument made that "[t]he protective decree the Trustee seeks before making payment must be entered in a State Court of competent jurisdiction or in some other Federal Court having diversity jurisdiction and venue." We think that vein of polemic contains its own refutation, and concedes the trustee's legitimate need for protection before paying over moneys to any claimant.
 
 
 31
 The next question for consideration is whether the decree of May 22, 1958 is binding on the four segregated shares and all parties claiming thereunder. We hold that it is.
 
 
 32
 Basically the assignees fail in three respects when they argue that inasmuch as they did not consent to the decree it is not binding on them. Their first error is that this is not a consent decree. In the second place the record fails to disclose, nor have they in argument before this Court shown, in what manner they are injured. Thirdly, they, the assignees, have failed in every way to protect their alleged rights at a time when they could and should have done so.
 
 
 33
 The District Court ruled on June 5, 1958 that the "[d]ecree entered * * * on May 22, 1958 * * * is a judicial determination." The Court there found that the trustee's fees were in accordance with the liquidation trust agreement, and that the attorney's fees were fair and reasonable in respect to the services rendered. This being so assignees seek to avoid a fair and equitable levy against the segregated shares on the spurious argument that they did not consent to this decree. The assignees apparently believe that if they italicize the word "consent" often enough in their brief they will convince this Court that their consent is an absolute prerequisite whereas such is simply not the case.
 
 
 34
 Of even more import is the fact that the assignees have sat by with actual knowledge that hearings were in progress before the Master on a general reference and yet did absolutely nothing. Regardless of who eventually is awarded all or part of the segregated shares they would be bound to pay their fair portion of the administrative costs and expenses of the trust estate. Hence the assignees can not be heard to say that they had no interest in the matter. This is more strongly emphasized by the fact that they vehemently attack the District Court's decree which, among other things, incorporates the Master's Report.
 
 
 35
 They further compounded their imprudence by failing to file any objections to the Master's Report after it was filed with the District Court on May 7, 1958, although they had due notice. They allowed the period in which to file objections as provided by Rule 53(e) (2) of the Federal Rules of Civil Procedure to elapse. They now contend that inasmuch as this decree merely amounted to an agreement between other parties any objection they might have made would have been unnecessary and superfluous. What we have already said is dispositive of this argument.
 
 
 36
 We, therefore, hold that the District Court's decree of May 22, 1958 is binding in all respects upon the four segregated shares and all parties claiming any interest therein.
 
 
 37
 As to the third question raised we fail to see how the order entered for support of Graveraet Y. Kaufman, whose deposition the appellants sought to take in New York, where he resided, can be justified under Rule 30(b) of the Federal Rules of Civil Procedure, or for that matter can be justified in any manner on this record. Rule 30(b) reads as follows:
 
 
 38
 "Orders for the Protection of Parties and Deponents. After notice is served for taking a deposition by oral examination, upon motion seasonably made by any party or by the person to be examined and upon notice and for good cause shown, the court in which the action is pending may make an order that the deposition shall not be taken, or that it may be taken only at some designated place other than that stated in the notice, or that it may be taken only on written interrogatories, or that certain matters shall not be inquired into, or that the scope of the examination shall be limited to certain matters, or that the examination shall be held with no one present except the parties to the action and their officers or counsel, or that after being sealed the deposition shall be opened only by order of the court, or that secret processes, developments, or research need not be disclosed, or that the parties shall simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court; or the court may make any other order which justice requires to protect the party or witness from annoyance, embarrassment, or oppression."
 
 
 39
 Therefore, this order could only be valid if it were necessary to protect Graveraet from annoyance, embarrassment, or oppression.
 
 
 40
 At the time the District Court entered the order on February 20, 1958 the following colloquy occurred:
 
 
 41
 "The Court: I am not passing upon the merits of your claim at all. All I am trying to do is give something to this man to live on while this case is pending.
 
 
 42
 "Mr. Hamilton Smith: You are not passing on the scope of the assignments?
 
 
 43
 "The Court: No.
 
 
 44
 "Mr. Hamilton Smith: This is merely a protective order under Rule 30.
 
 
 45
 "The Court: That is what he calls it.
 
 
 46
 "Mr. Hamilton Smith: That is what he calls it, yes.
 
 
 47
 "The Court: All I am trying to do is to give this man, who has been represented to me as being destitute. * * *
 
 
 48
 "I just can't understand why during the period of this litigation being pending that these people should be so destitute that they are unable to have the necessities of life. That is all I am doing here, providing something for him while the litigation is pending. I am not passing upon the merits of your claim one way or the other."
 
 
 49
 Thus the District Court intends to support Graveraet with funds that are claimed in toto by his assignees. This so-called "protective order" has in effect adjudicated, to some extent, the rights of the parties to this action prior to a determination on the merits.
 
 
 50
 While it is true the District Court has some discretion to determine what circumstances will justify the protection of a party or witness under Rule 30(b) the facts here furnish no basis whatsoever for the order in question.
 
 
 51
 Having held that the District Court has jurisdiction of the subject matter and of the parties and that the May 22, 1958 decree is binding on all the parties hereto, said decree and the June 5, 1958 order denying the motion to modify or amend are affirmed and, for the reason stated, the February 20, 1958 order is reversed.