## INTERNATIONAL CO. OF ST. LOUIS v. OCCIDENTAL LIFE INS. CO. (OF CALIFORNIA).[*]

### No. 11085.

Circuit Court of Appeals, Eighth Circuit.

July 12, 1938.

Rehearing Denied Aug. 11, 1938.

---

[*] Writ of certiorari denied 59 S.Ct. 106, 83 L.Ed. —.

W. L. Mason, of St. Louis, Mo. (Mason & Flynn, of St. Louis, Mo., on the brief), for appellant.

George E. Brammer, of Des Moines, Iowa (Joseph Brody, Clyde B. Charlton, and Louis A. Parker, all of Des Moines, Iowa, and Robert T. Burch, of St. Louis, Mo., on the brief), for appellee.

Before STONE, WOODROUGH, and BOOTH, Circuit Judges.

WOODROUGH, Circuit Judge.

This appeal is taken from a final decree of the District Court of the United States for the Eastern District of Missouri declining to entertain the plaintiff's bill in equity and dismissing the same on account of proceedings pending in the United States District Court of Kansas.

It appears that in February of 1936 the plaintiff acquired through the receiver of the Fire Insurance Company of Chicago, a so-called participating certificate issued in 1929 by the Federal Reserve Life Insurance Company for money advanced to it by the Insurance Investment Company. By the terms of the certificate the Federal Reserve Life Insurance Company promised to pay to the holder $300,000 and interest out of a fund to be created by the company setting aside semi-annually all of its net surplus gains in excess of $50,000. The certificate recites that the obligation of the company "is a contingent liability, not an absolute promise to pay, but is limited to its firm obligation and covenant to apply the said surplus gains to the making of the payments herein provided for and is not an obligation to be paid out of the general assets of the company other than the fund mentioned in this certificate." The certificate also provides:

"In the event of a reinsurance of the business of the Federal Reserve Life Insurance Company the reinsuring company shall be bound each six (6) months to pay the savings and profits arising out of the reinsured business (less such part of such savings and profits as may be payable under prior contracts to other persons or corporations) to the then holder or holders of this certificate or any certificate or certificates issued in lieu of this certificate until the full balance of interest and principal due thereon shall have been paid."

In May, 1936, shortly after the plaintiff acquired the certificate, the maker thereof, the Federal Reserve Life Insurance Company, was adjudicated to be insolvent by the United States District Court of Kansas and an equity receiver was appointed to take charge of and liquidate its affairs. The company had a large amount of insurance in force and the Kansas court adopted a plan of liquidation designed to secure insurance protection for those of the policyholders who would consent to a reinsurance of their policies. Instead of ordering a sale of the assets the court caused

them to be vested in the Occidental Life Insurance Company, a California company authorized to do business in Kansas, upon conditions whereby that company undertook to reinsure the old policyholders to the extent which the court should find justified by the value of the assets and as determined by the court from time to time.

The plan of liquidation followed by the court contemplated that all the net profits which might arise during the period of fifteen years from the administration of the assets by the Occidental company after meeting the reinsurance obligations, and all the increment in value of the assets for the same period, should inure to the benefit of the old policyholders and creditors. After the lapse of fifteen years the remaining assets were decreed to become the property of the Occidental company. Accountings were required to be made to the court and jurisdiction was reserved in the court to enforce the ultimate disposition of the assets in accordance with its plan.

All persons having or claiming to have any interest, right, title or lien in, to, or against the assets were enjoined from asserting the same against the property in the hands of the Occidental company. And it was provided that the court retained exclusive jurisdiction of actions to construe the decree and reinsurance agreement. All persons having claims were given the right to come into the receivership proceedings for the purpose of having their claims to or interest in the property of the insolvent company established and priority thereof decreed. Provision was made by the court in its decree to satisfy the claims of all persons whom the court should find to be entitled to share or have any interest in the property, and the power was reserved to subject any of the assets transferred to the Occidental company to such claims. The decree makes disposition of the earnings and profits arising from the assets as distinct from the corpus of the fund and reserves the control and jurisdiction of the court as to each for the purpose of carrying out the decree. An accurate summary of the salient provisions of the decree of the Kansas court and of the so-called reinsurance agreement authorized and approved in, and made a part of the decree, appears in the opinion of the Circuit Court of Appeals of the Tenth Circuit in Hobbs v. Occidental Life Ins. Co., 87 F.2d 380 q.v.[1]

1 "The Federal Reserve Life Insurance Company was organized under the laws of Kansas. One of its policyholders who was also a stockholder, acting for himself and all others similarly situated, instituted this action for the appointment of a liquidating receiver. An order was entered directing that the Commissioner of Insurance of the state be notified of the pendency of the suit and that he be permitted to intervene if he so desired. A copy of such order and a copy of the amended bill were served on the commissioner, but he failed to appear. The court found on May 22, 1936, that the affairs of the company had been wrongfully and dishonestly managed; that its assets were being dissipated; and that it was hopelessly insolvent. A temporary receiver was thereupon appointed and he was directed to seek proposals from solvent insurance companies to reinsure the outstanding policies of the failed company. Five days thereafter the company filed an answer in which it consented to the appointment of a permanent receiver and to the entry of a final decree directing reinsurance, rehabilitation, or liquidation of its affairs. Two days later the temporary receiver was appointed permanent receiver. The receiver and Occidental Life Insurance Company, a corporation organized under the laws of California and authorized to engage in business in Kansas, entered into a contract on June 13th, in which it was provided that, subject to the liens, terms and conditions of the agreement and not otherwise, Occidental reinsured and assumed the liabilities of Federal Reserve under its policies of insurance which were in force on May 22d; that coincident with the approval of the contract, title to all of the assets of Federal Reserve including those on deposit with the insurance department of any state, should vest in Occidental and that the receiver should execute appropriate instruments of conveyance or assignment; that all such assets and the profits from them, except books, records, office furniture, fixtures, and appliances, together with the net gains from the business reinsured should be administered in a separate account called Federal Reserve fund; that since the assets of Federal Reserve at their then value, were insufficient to cover the reserve liabilities of that company a lien of 50 per cent. of the net equity should be placed against each policy thus reinsured with provision that the lien should be adjusted by an appraisal of the assets as of May 22d, and should be thereafter adjusted

The court undertook by several provisions of its decree and reinsurance agreement[2] to assure the court's full protection to the Occidental company in the possession of the assets which were turned over to it and also to accord the same protection to the creditors in such rights as the court might find them to have as against aliquot parts thereof.[3]

The plaintiff in this case did not appear in the proceedings in the Kansas court, but afterwards in December, 1936, it filed its

---

from time to time by the application of the net profits arising out of the business of the Federal Reserve, but in no event should it exceed 50 per cent. of such net equity; that if, at the end of any calendar year prior to 1951 or on June .30, 1951, the total lien and accrued interest on all policies then in force had decreased to such an extent that it was equal to or less than the equivalent of $11 per $1,000 of premium paying insurance then in force, Occidental should contribute to the Federal Reserve fund an amount sufficient to discharge such lien; that if on June 30, 1951, such lien should exceed the named amount, Occidental should contribute to the fund the sum of $11 per $1,000 of such insurance, less such percentage thereof as that contribution bears to the net equity of the policies reinsured; that thereafter the lien should not be subject to further change except for interest; that the lien against any policy could be discharged at any time by the payment to Occidental of the entire amount and that thereupon such policy should become free and not subject to subsequent adjustment of the lien; that death claims should be paid in full, the reduction having exclusive application to the net equity in the policies; that upon the application of the insured named in any reinsured policy, Occidental should have the right to issue a new policy on its form and credit thereto any amount to which the insured would then be entitled under the terms of the agreement; that Occidental did not assume any liability of Federal Reserve except as set forth in the agreement; and that Occidental should promptly mail to the insured in each policy in force on May 22d, a printed copy of the agreement and a certificate of assumption of liability. The agreement contained many other provisions, but this résumé of the pertinent ones will suffice for present purposes.

"The court's approval, appended to the contract, was dated June 13th; and on the same date a decree was entered approving the agreement, directing the receiver to carry its provisions into execution and transferring all of the assets to Occidental, but with the provision that every holder of a policy who elected to reject the benefits of the agreement should within thirty days after Occiden-tal mailed the notice of its assumption, deliver to the receiver his rejection in writing; that such an election should be considered as a claim for the cash surrender value of his policy as of May 22d, plus any amount thereafter paid on such insurance less the cost of carrying such insurance and less any amount paid by the receiver as a premium on any reinsurance treaty or contract covering such policy; that Occidental should be under no obligation or liability of any kind to any policyholder thus electing to reject benefits under the agreement; and that all policyholders who failed to reject such benefits in the manner and within the time specified should be deemed to have accepted such reinsurance contract and should be conclusively bound by its terms."

2 Although the contract of the Occidental company is called a reinsurance agreement, it will be noted that it does not reinsure in the ordinary sense of assuming the full liability upon the policies. The assets were insufficient to justify such an assumption. The liabilities to the policyholders which are assumed are materially diminished by the lien fixed on the policies.

3 In said decree, the Court found:

"That ' * * * said Company is insolvent and has been insolvent at all times from and including April 10, 1935, the date of the filing of the petition by the plaintiff in this cause.' " (Decree, par. 2.)

"That the Court has jurisdiction * * * of the assets of the defendant, The Federal Reserve Life Insurance Company." (Decree, par. 1).

Decree, paragraph 6, in part:

"That the reinsurance agreement proposed to be executed by the Occidental Life Insurance Company, a copy of which is attached hereto, marked Exhibit "A" and made a part hereof, be and the same is hereby approved and the Receiver herein, for the purpose of acquiring and purchasing reinsurance for the benefit of the policyholders of the defendant company, is hereby authorized and directed to execute and deliver said agreement, to carry out and perform each and all of the terms, covenants and provisions thereof on his part to be kept and performed; upon the execution and deliv-

bill in equity against the Occidental company in the Circuit Court of St. Louis, Missouri. It set up its participating certificate and it alleged that by reason of the proceedings had in the Federal Reserve Life Insurance Company receivership suit in the Kansas court, as such proceedings were described in the bill, the Occidental company had reinsured the business of the Federal Reserve company within the meaning of the certificate; that the Occidental company had done so with knowl-

ery of said agreement the title of the defendant company to all of its assets shall thereupon absolutely vest in the Occidental Life Insurance Company free and clear from any and all claims whatsoever of the defendant company thereto, or any person or persons claiming by, through or under said defendant Company."

Reinsurance Agreement, paragraph 32, in part:

"All assets conveyed, excluding those covered by Paragraph 37 (furniture, fixtures, etc.) hereof and those paid by the receiver of any Ancillary Receiver to the Company, together with all net gains and profits from the business reinsured, and from the assets administered by the Company as hereinafter provided, shall constitute the Federal Reserve Fund. The Company shall separately account for the Federal Reserve Fund and so set the same apart that it will not be subject to claims or demands of other policyholders or creditors of the Company * * *."

Reinsurance Agreement, paragraph 36, in part:

"The Company shall administer all of the assets delivered to it pursuant hereto. Except as to assets described in paragraph 37 of this Agreement, the Company shall not sell, exchange, or otherwise dispose of said assets or any portion thereof, or divest itself of title thereto, except on written authority from the Receiver in such form as the Court shall direct, * * *."

Reinsurance Agreement, paragraph 33, in part:

"Until June 30, 1951, all net profits as defined herein, unless the lien is sooner discharged, shall inure to the use and benefit of the policyholders of the Federal Reserve entitled thereto under the terms of this Agreement * * *"

Reinsurance Agreement, paragraph 13a, in part:

"Initially said lien is based upon an approximate and provisional valuation of the assets and liabilities of The Federal Reserve and is tentatively fixed at 50% of the net equity of each contract reinsured hereunder. Said initial lien shall not be increased above the said 50% of the net equity. The initial lien shall be adjusted by an appraisal or valuation of the assets, made as hereinafter set forth, to be made as soon as practicable and as of May 22, 1936. After the first adjustment of said lien in pursuance of said appraisal, the lien as thus established shall be adjusted from time to time by the application of the net profits * * *."

Reinsurance Agreement, paragraph 13c, in part:

"Regardless of any provision contained in this Agreement, and for the purpose of justly and equitably carrying out the true intent of this Agreement, the Court may cause an appraisal to be made of the assets in the Federal Reserve Fund, at such time and in such manner as the Court may direct, for the purpose of determining the amount of the lien, if any, existing on June 30, 1951, or at any other time."

Decree, paragraph 6, in part:

"Upon the execution and delivery of said agreement the title of the defendant company to all of its assets shall thereupon absolutely vest in the Occidental Life Insurance Company free and clear from any and all claims whatsoever of the defendant Company thereto, or any person or persons claiming by, through or under said defendant company, and The Federal Reserve Life Insurance Company, a corporation and all persons claiming by, through or under it, including its stockholders, their successors and assigns, are hereby forever restrained from interfering in any manner with the title of the Occidental Life Insurance Company in and to said assets or its right to the possession thereof, and from asserting any right, title, lien or interest therein * * *."

Decree, paragraph 8, in part:

"That all creditors and all persons, firms and corporations having any claim or demand against The Federal Reserve Life Insurance Company, a Corporation, or having or asserting any title to or lien against or equitable interest in or right of preference or priority as to any of the assets forming a part of the receivership estate herein, other than dissenting policyholders and contract holders as referred to in the preceding paragraph hereof, shall file written proofs of their claims or demands with the Clerk of the United States District Court for the District of Kansas on or before September 15, 1936."

edge of the certificate and that it had thereby become bound as provided in said certificate to pay the savings and profits arising out of said reinsurance business to the plaintiff. Plaintiff prayed the court to decree that said reinsured business as to all savings and profits realized by the defendant stands charged with an equitable lien in favor of the plaintiff until said sum of $300,000, together with interest thereon as aforesaid be paid, and that the said defendant is the holder of said business as trustee for the benefit of this plaintiff to the extent that it, the said defendant, and all persons claiming by, through or under it, are bound to pay to this plaintiff all savings and profits realized from its business (less such part of such savings and profits as may be payable under prior contracts to other persons or corporations) until the obligation of said Participating Certificate be discharged and that the said defendant enter into an accounting with this plaintiff setting forth in detail all policies and business taken over under said reinsurance contract and all receipts and disbursements, profits and savings made by it on said business, and that it pay over to this plaintiff its portion of such profits and savings as above set forth in said Participating Certificate and that the Court grant to the plaintiff such other and further relief in the premises as to it may seem meet and proper.

The bill in equity disclosed diversity of citizenship and more than three thousand dollars involved and removal was taken to the federal court. There the defendant, the Occidental company, presented its contention among other things that the institution and prosecution of the suit by plaintiff was an unwarranted and illegal interference with the administration of the assets of the insolvent Federal Reserve Life Insurance Company by the Kansas court, and that by reason of the decree and reinsurance agreement of the Kansas court the plaintiff had no right to prosecute in the Missouri court the cause of action alleged by it. The decree of the Kansas court and reinsurance agreement attached and made a part of that decree were offered in evidence and on consideration thereof the court dismissed the plaintiff's bill and the plaintiff has taken this appeal.

There is no contention that the Kansas court did not acquire jurisdiction over all of the assets and business of the Federal Reserve company or that it lacked power to liquidate the same to satisfy the claims of creditors of the company. Nor is it contended that the power of the court was limited to effecting liquidation by making an outright sale of the assets. There were about 27,000 policyholders whose insurance approximated $30,000,000 and the company's "insurance business" (distinguished from its other assets) was a liability to the Federal Reserve company which that company could not carry and which rendered it hopelessly insolvent. Upon the adjudication of insolvency and the appointment of the receiver and the termination of the insurance policies as enforceable obligations for their face amounts,[4] all that was left of

4 In Hobbs v. Occidental Life Ins. Co., supra, the court said: "It is well settled that upon the adjudication of insolvency and the appointment of a receiver on May 22d, the policies of Federal Reserve were terminated as enforceable obligations for their respective face amounts, and the holders became creditors each for an amount equal to the then value of his policy with the right to participate pro rata in the assets in receivership. Lovell v. St. Louis Mut. Life Ins. Co., 111 U.S. 264, 4 S.Ct. 390, 28 L.Ed. 423; Carr v. Hamilton, 129 U.S. 252, 9 S.Ct. 295, 32 L.Ed. 669; Ingersoll v. Missouri Valley Life Ins. Co., C.C., 37 F. 530; Robinson v. Mutual Reserve Life Ins. Co., C.C., 162 F. 794; People v. Commercial Alliance Life Ins. Co., 154 N.Y. 95, 47 N.E. 968; Commonwealth v. American Life Ins. Co., 162 Pa. 586, 29 A. 660, 42 Am.St.Rep. 844; Fuller v. Wright, 147 Ga. 70, 92 S.E. 873, L.R.A.

1917E, 1139; Boyd v. Wright, 148 Ga. 216, 96 S.E. 388, 1 A.L.R. 593; Davis v. Amra Grotto, Inc., 169 Tenn. 564, 89 S.W.2d 754, 106 A.L.R. 1506. The privilege of thus participating in such assets was the only right which the holders had from the adjudication of insolvency until the reinsurance agreement became effective.

"The effect of the reinsurance agreement was that with the assets in the hands of the receiver, holders of policies acquired new insurance protection. The new protection came from Occidental. The liability of Federal Reserve for the respective sums specified in its policies was not continued after the adjudication of insolvency and the appointment of a receiver, either by decree of the court or the reinsurance agreement. The policies were in effect after the reinsurance contract became operative for the sole purpose of determining, in conjunc-

value of the "insurance business" of the insolvent was the opportunity resulting from it for a solvent going insurance company to supply new insurance protection to the old policyholders. Only such a going insurance company could preserve the unity of the former business and supply the new insurance protection to the entire body of policyholders.

The contract embodied in the decree of the Kansas court was found to be a practical way to realize upon that opportunity for the benefit of the creditors of the insolvent. The court thereby aided the solvent going insurance company to obtain the contracts with the old policyholders providing new insurance protection for them. The court regulated the amount of reduction of the insurance of old policyholders by prescribing the extent and conditions of the lien on the novated policies. In order to enable the going company to carry such new insurance protection the court turned the assets of the insolvent over to the solvent company, but upon such terms as to keeping the property segregated and rendering accounts thereon, etc., as to preserve the court's jurisdiction and control over it. The gist of the court's decree was to liquidate the property through the live and going insurance company instead of by an individual receiver, but not to relinquish the court's custody of the res which was lawfully within its jurisdiction. And the decree evidenced the dominant intent of the court that during the fifteen year period all the increment of the assets of the insolvent and all the profits from the reinsurance should be kept segregated, subject to the court's jurisdiction, to be applied to the benefit of the creditors of the insolvent, including those who had been its policyholders but who had elected to accept the novation in which the Occidental company was substituted in point of liability with the changes consented to by them.

The further intent of the court to protect the reinsurer's interest as fixed by the agreement and decree is equally apparent. The necessity to reserve the jurisdiction in order to effectually protect such interest follows from the nature of the obligations which the court required to be undertaken and which were undertaken by that company. It is also the intent of the decree to retain in the Kansas court exclusive jurisdiction of all actions involving an interpretation of the decree and reinsurance agreement while the administration remained in the court.

It seems clear that the receivership proceedings in the Kansas court in liquidation of the affairs of the Federal Reserve Life Insurance Company accomplished a withdrawal of the property of the company from the jurisdiction of other courts until the administration of the assets by the Kansas court has been completed and that the administration has not been completed. One of the items of the property over which the Kansas court specifically took jurisdiction and which it is attempting to realize upon for the benefit of the thousands of creditors (the policyholders whose claims have been allowed) is the profit which may be derived from insuring the old policyholders. The opportunity for the making of such a profit comes from the court's action in reducing the amount of the insurance by fixing the lien on the policies; the action of the court in vesting the assets of the insolvent in the Occidental company to be administered as a separate fund for the benefit of creditors found to be entitled thereto and subject to the court's reserved jurisdiction, and in the assurance of the court to the Occidental company that it may have the fund and the profits therefrom for itself after it has paid off the lien upon the policies in full or to the extent specified in the court's decree.

---

tion with the contract, the liability of Occidental, not continuing liability of Federal Reserve for which the securities were confessedly deposited. There was a novation in which Occidental was substituted for Federal Reserve in point of liability with certain changes which were made with the consent of the policyholders.' Northwestern Nat. Life Ins. Co. v. Gray, 8 Cir., 161 F. 488; Illinois Life Ins. Co. v. Tully, 8 Cir., 174 F. 355; Cunningham v. Great Southern Life Ins. Co., Tex.Civ.App., 66 S.W.2d 765. The right of such holders to participate pro

rata in the assets in receivership could not be taken from them without their consent. Relfe v. Columbia Life Ins. Co., 10 Mo.App. 150; American Bonding & Casualty Co. v. Chicago Bonding &. Ins. Co., 226 Ill.App. 475; McMurray v. Commonwealth, 249 Mass. 574, 144 N. E. 718. But no effort was made to do that. Instead, the court expressly preserved to each of them the right to file a claim and thus receive his aliquot interest in such assets; and the transfer to Occidental was subject to that right."

Turning to the bill in equity of the plaintiff in this case, it is observed that the object of the bill is to divert the profits which may be earned by insuring the old policyholders upon the altered terms and conditions to which they have consented. By the decree of the Kansas court those profits are assured to the creditors of the insolvent company including the old policyholders for fifteen years and to the Occidental company, and the court has reserved jurisdiction and provided for accountings to see to it that those creditors and the Occidental company get the benefit of such profits. But in the plaintiff's bill it is prayed that the accounting of such profits be done by the Missouri court and that the Missouri court impress a different trust upon them and that the Occidental company be required to divert them from the control of the Kansas court into the hands of the plaintiff. The bill of the plaintiff therefore calls upon the Missouri court to exercise its jurisdiction over and to dispose of property which the Kansas court has lawfully taken into its control and has partly administered upon and as to which it has reserved jurisdiction to complete its administration. We think that the Missouri District Court, being a court of coordinate jurisdiction with the Kansas court, rightly declined to proceed with the case or to disturb the control of the property by the Kansas court. Wabash R. R. Co. v. Adelbert College, 208 U.S. 38, 28 S.Ct. 182, 52 L.Ed. 379; Lang v. Choctaw O. & G. R. Co., 8 Cir., 160 F. 355; St. Louis-S. F. R. Co. v. Byrnes, 8 Cir., 24 F.2d 66, 73; Shepherd v. St. Louis Public Service Co., 8 Cir., 64 F.2d 612, 616.

In Shepherd v. St. Louis Public Service Corp., 8 Cir., 64 F.2d 612, 617, we quoted with approval from Lang v. Choctaw, O. & G. R. Co., 8 Cir., 160 F. 355, as follows:

"That decree and the accepted bid constituted a contract of sale between the court and the purchaser. They also became a contract of sale between the parties to the suit, including the defendants, and the purchaser, because in the sale the court was the agent and representative of those parties, and it sold the property for them. One of the terms of that contract was that the purchaser in addition to his bid should pay such claims filed in that cause as the court should adjudge to be prior in lien to the mortgage and that the court reserved to itself exclusive jurisdiction to determine what claims were so prior in lien. The federal court which was then in the exclusive custody of the property had the undoubted right to retain exclusive jurisdiction to determine this question. That it effectually made this reservation is demonstrated by the fact that it did so in the very terms which the Supreme Court held sufficient to accomplish that purpose in Julian v. Central Trust Company, 193 U.S. [93], 110, 24 S.Ct. 399, 48 L.Ed. 629. The agreement of the court that it reserved to itself and would exercise exclusive jurisdiction to determine the priority of the claimed liens which the purchaser promised to pay was one of the material terms of the contract of sale. One might be willing to pay a certain price for a railroad in addition to the claims against it which a specified court should adjudge prior in lien to the mortgage when he would hesitate long to pay that price or to purchase at all subject to claims which unknown tribunals might thus adjudge. Courts should not be less solicitous than private parties to strictly comply with the terms of their agreements, and the contract of sale in this case required the court below to exercise the exclusive jurisdiction which it reserved and to prevent any other court or party from imposing upon the property which it had sold any lien or charge on account of any claim filed in the foreclosure cause which had not been adjudged by the court which conducted that suit to be prior in lien to the mortgage."

We further said:

"As said in Wabash R. Co. v. Adelbert College, 208 U.S. 38, 53, 28 S.Ct. 182, 187, 52 L.Ed. 379: 'The effect of the decree is to say to any purchaser under it, you must take this property subject to all claims which this court shall hereafter adjudge to be lawful, and you may be assured that you will be held to pay none other, and for the purpose of making this statement good the court reserves jurisdiction over the property and claims in respect to it, and the right to take it again into possession and exercise again the power of sale.' * * *

"That the provisions of this decree are entirely proper is fully settled. Cincinnati, etc. Ry. Co. v. Indianapolis Union Ry. Co., 270 U.S. 107, 46 S.Ct. 221, 70 L.Ed. 490; Central Union Trust Co. v. Anderson County, Texas, 268 U.S. 93, 45 S.Ct. 427, 69 L.Ed. 862; Wabash R. Co. v. Adelbert College, 208 U.S. 38, 28 S.Ct. 182, 52 L.Ed. 379; Julian v. Central Trust Co., 193 U.S. 93, 24 S.Ct. 399, 48 L.Ed. 629; St. Louis-

San Francisco R. Co. v. Byrnes, 8 Cir., 24 F.2d 66; Smith v. Mo. Pac. R. Co., 8 Cir., 266 F. 653; Lang v. Choctaw, Okla. & Gulf R. Co., 8 Cir., 160 F. 355.

"That they govern those not parties to the action is settled. Central Union Trust Co. v. Anderson County, Texas, 268 U.S. 93, 45 S.Ct. 427, 69 L.Ed. 862; Wabash R. Co. v. Adelbert College, 208 U.S. 38, 28 S. Ct. 182, 52 L.Ed. 379; Julian v. Central Trust Co., 193 U.S. 93, 24 S.Ct. 399, 48 L. Ed. 629; St. Louis-San Francisco R. Co. v. Byrnes, 8 Cir., 24 F.2d 66; Smith v. Mo. Pac. R. Co., 8 Cir., 266 F. 653."

In Bryant v. Atlantic Coast Line R. Co., 2 Cir., 92 F.2d 569, the court said (page 570):

"Laying aside bankruptcy which is expressly excepted, the most common situation is where a suit has been first begun in a federal court which has assumed custody of a res, or which in that suit could lawfully do so. The federal court may in that case forbid the prosecution of another suit in which a state court seeks to take the res into its own custody. Farmers' L. & T. Co. v. Lake Street E. R. Co., 177 U.S. 51, 20 S. Ct. 564, 44 L.Ed. 667; Adelbert College v. Wabash R. Co., 215 U.S. 598, 30 S.Ct. 400, 54 L.Ed. 343. The decisions so holding are legion; though even in that situation the federal court may not enjoin suits to declare the rights of claimants to the res, if they do not and cannot disturb its custody. General Baking Co v. Harr, 300 U.S. 433, 57 S.Ct. 540, 81 L.Ed. 730. Akin to this jurisdiction is that under which a federal court enjoins suits to seize, or relitigate the title of a purchaser to, property bought under its own decree. Julian v. Central Trust Co., 193 U.S. 93, 24 S.Ct. 399, 48 L. Ed. 629; Lang v. Choctaw O. & C. R. Co., 8 Cir., 160 F. 355. Cf. Riverdale Cotton Mills v. Alabama & G. Mfg. Co., 198 U.S. 188, 25 S.Ct. 629, 49 L.Ed. 1008."

The plaintiff has contended that its suit was in the nature of a suit in personam to establish a right merely and that it should have been entertained as such by the Missouri court. But it cannot be so regarded. The prayer of the bill that the Missouri court compel an accounting in that court of all the policies and business covered by the Kansas court's decree, and that the Missouri court upon such accounting impress a trust upon the profits as ascertained by it, and that it order such profits to be paid over to the plaintiff demonstrates the purpose to draw the property itself into the jurisdiction of the Missouri court and to take it out of the control of the Kansas court. The cases relied on do not justify such procedure but are distinguishable. Riehle v. Margolies, 279 U.S. 218, 49 S.Ct. 310, 73 L.Ed. 669; Waterman v. Canal-Louisiana Bank & Trust Co., 215 U.S. 33, 30 S.Ct. 10, 54 L.Ed. 80; Commonwealth Trust Co. v. Bradford, 297 U.S. 613, 56 S. Ct. 600, 80 L.Ed. 920; General Baking Co. v. Harr, 300 U.S. 433, 57 S.Ct. 540, 81 L. Ed. 730; Moran v. Sturges, 154 U.S. 256, 14 S.Ct. 1019, 38 L.Ed. 981; Calhoun v. Lanaux, 127 U.S. 634, 8 S.Ct. 1345, 32 L.Ed. 297; United States v. Bank of New York & Trust Co., 296 U.S. 463, 56 S.Ct. 343, 80 L.Ed. 331.

In Riehle, Receiver, v. Margolies, a creditor brought an action in the state court for damages for breach of contract against a corporation, and two months thereafter the United States District Court appointed a receiver for the corporation in what was called a friendly receivership. The action in the state court proceeded to judgment in the sum of $55,283.88 and the Supreme Court held that the adjudication was a determination of the creditor's right conclusive in the receivership administration. The court recognized that (page 312) "The appointment of a receiver of a debtor's property by a federal court confers upon it, regardless of citizenship and of the amount in controversy, federal jurisdiction to decide all questions incident to the preservation, collection, and distribution of the assets. It may do this either in the original suit, Rouse v. Letcher, 156 U.S. 47, 49, 50, 15 S.Ct. 266, 39 L.Ed. 341, or by ancillary proceedings, White v. Ewing, 159 U.S. 36, 15 S.Ct. 1018, 40 L.Ed. 67. Compare Kelley v. Gill, 245 U.S. 116, 119, 38 S.Ct. 38, 62 L.Ed. 185. And it may, despite section 265 of the Judicial Code (28 U.S.C.A. § 379), issue under section 262 (28 U.S.C.A. § 377), or otherwise, all writs necessary to protect from interference all property in its possession. Julian v. Central Trust Co., 193 U.S. 93, 112, 24 S.Ct. 399, 48 L.Ed. 629." The court also said, "Of course, no one can obtain any part of the assets, or enforce a right to specific property in the possession of a receiver, except upon application to the court which appointed him. Lion Bonding & Surety Co. v. Karatz, 262 U.S. 77, 88, 89, 43 S.Ct. 480, 484, 67 L.Ed. 871."

On the other hand, the Supreme Court pointed out that in so far as the state court merely determined the amount of money owing by the corporation to the creditor, it did not deal directly with any of the property of the corporation. The court declined to decide whether a judgment recovered in a suit commenced after the appointment of the receiver would operate as res adjudicata. "Margolies' suit was begun before. He had, under section 265 of the Judicial Code [28 U.S.C.A. § 379], the right to prosecute that suit to judgment despite the institution later of the receivership proceedings." But there was no exercise by the state court of jurisdiction in rem, directly upon any of the property which the federal court was administering upon in receivership.

We think the situation presented in the Margolies Case is in contrast to the case at bar. In Margolies' suit in the state court against the corporation, there was no way for the state court to disturb the administration of the corporate assets being administered in the federal receivership. But here the plaintiff has brought into the Missouri court the Occidental company which has funds confided to it to be administered under the control of the Kansas court. It asks the Missouri court to act directly on the funds and to order a different application to be made of them. Such a judgment would directly disturb the administration by the Kansas court over the fund which has been created through the operation of its decree and which it has reserved jurisdiction to preserve for the purposes of its decree.

In Waterman v. Canal-Louisiana Bank & Trust Co., 215 U.S. 33, 30 S.Ct. 10, 54 L. Ed. 80, the plaintiff sued in the District Court of the United States to establish her heirship rights in the estate of her deceased aunt and the Supreme Court said that it had (page 12) "uniformly maintained the right of Federal courts of chancery to exercise original jurisdiction (the proper diversity of citizenship existing) in favor of creditors, legatees, and heirs, to establish their claims [against the estates of deceased persons] and have a proper execution of the trust as to them." But the federal equity courts proceed in those cases because their jurisdiction "is not subject to limitations or restraint by state legislation establishing courts of probate, and giving them jurisdiction over similar matters."

Such cases do not control or solve the difficulties here. Byers v. McAuley, 149 U.S. 608, 13 S.Ct. 906, 37 L.Ed. 867.

In Commonwealth v. Bradford, supra, the receiver of a national bank was allowed to maintain a suit in the federal court against a trustee to establish the rights of the receiver in and to a fund which was in the custody of the trustee. The trust had been created by the voluntary action of the bank but the Orphans' Court had appointed the successor trustee. The Supreme Court determined that the control retained by the Orphans' Court did not materially differ from that exercised by probate courts over such fiduciaries as guardians, administrators, executors, etc. "The jurisdiction of federal courts to entertain suits against the latter is clear, when instituted in order to determine the validity of claims against the estate or claimants' interests therein. Such proceedings are not in rem; they seek only to establish rights; judgments therein do not deal with the property and order distribution; they adjudicate questions which precede distribution. Byers v. McAuley, 149 U.S. 608, 620, 13 S.Ct. 906, 37 L.Ed. 867; Security Trust Co. v. Black River National Bank, 187 U.S. 211, 227, 23 S.Ct. 52, 47 L.Ed. 147; Waterman v. Canal-Louisiana Bank & Trust Co., 215 U. S. 33, 43, 30 S.Ct. 10, 54 L.Ed. 80; Riehle v. Margolies, 279 U.S. 218, 223, 49 S.Ct. 310, 312, 73 L.Ed. 669; Harrison v. Moncravie, 8 Cir., 264 F. 776, 779. Property in its [the trustee's] possession is not in custodia legis as in case of receivers. Hinkley v. Art Students' League, 4 Cir., 37 F. 2d 225, 226; Appeal of Hall, 112 Pa. 42, 54, 3 A. 783; Strouse v. Lawrence, 160 Pa. 421, 425, 28 A. 930; Goodwin v. Colwell, 213 Pa. 614, 616, 63 A. 363; Nevitt v. Woodburn, 190 Ill. 283, 289, 60 N.E. 500." (56 S.Ct. page 602.)

The distinction from the case at bar is again apparent. There the receiver's "judgment did not deal with the property and order distribution", but the prayer in this case is for relief of substantially that character.

In General Baking Co. v. Harr, supra, it was held that a creditor of an insolvent Pennsylvania bank could maintain suit to fasten a trust on funds in an insolvent state bank notwithstanding that the bank had been taken over by a state official pursuant to the state law. The decision was based entirely upon Commonwealth v. Bradford, supra.

In United States v. Bank of New York & Trust Co., 296 U.S. 463, 56 S.Ct. 343, 80 L.Ed. 331, the United States sued in the federal court certain depositaries of funds that had belonged to Russian insurance companies, and prayed that the depositaries account and pay over to the complainant "as 'the sole and exclusive owner'" the entire fund in their hands. The government contended that the suits for accounting were not suits in rem but in personam; and that to allow the federal court to pass upon the rights asserted would not necessarily interfere with the jurisdiction or control by the state court over the res. The court said (page 347), "But these suits are not to enforce a personal liability, but to obtain possession of the respective funds. The suits are not merely to establish a debt or a right to share in property, and thus to obtain an adjudication which might be had without disturbing the control of the state court. Compare Waterman v. Canal-Louisiana Bank Co., 215 U.S. 33, 44-46, 30 S.Ct. 10, 54 L.Ed. 80, Riehle v. Margolies, 279 U.S. 218, 223, 224, 49 S.Ct. 310, 312, 73 L. Ed. 669. Complainant demands that the depositaries account and pay over to the complainant, as 'the sole exclusive owner,' the entire funds in their hands. Thus the object of the suits is to take the property from the depositaries and from the control of the state court, and to vest the property in the United States to the exclusion of all those whose claims are being adjudicated in the state proceedings."

We think there is substantially the same object in the suit at bar. In this case also the plaintiff prays an adjudication that defendant is bound "to pay to plaintiff all savings and profits realized from its business, etc." (up to the amount of its claim) and "that the said defendant enter into an accounting with this plaintiff setting forth in detail all policies and business taken over under said reinsurance contract and all receipts and disbursements, profits and savings made by it on said business, and that it pay over to this plaintiff its portion of such profits and savings as above set forth in said Participating Certificate * * *."

In Moran v. Sturges, supra, the holding was that the federal District Court was not required to stay its hand (in determination of maritime liens) until the termination of the proceedings in the state court because that court was without jurisdiction as to maritime liens and was incapable of displacing them.

It seems to us that none of the cited cases sustains the plaintiff's right to maintain its suit in the Missouri court. We think the suit would wrongfully interfere with the control of the Kansas court over the property in its lawful custody and that the effect of granting the relief prayed for would be to deprive the Kansas court of the jurisdiction reserved by it.

### Defendant's Failure to Comply with Equity Rules 29 and 70½, 28 U.S.C.A. following Section 723.

The plaintiff has very strongly contended to this court that defendant did not proceed in the trial court in accordance with Equity Rule 29, and also that there should be reversal because the trial court failed to make findings and conclusions as it is required to do in all equity cases under Equity Rule 70½.

It is true that failure to obey Rule 70½ has necessitated reversal in some cases and the importance of obedience to the rule must be strongly emphasized. Humphrey v. Helgerson, 8 Cir., 78 F.2d 484. In this case, however, there was no testimony before the trial court except the decree of the Kansas court and the reinsurance agreement made a part thereof, and the questions for decision arise from and are determined upon that record and the plaintiff's bill of complaint, and under the particular circumstances the decree need not be reversed for want of compliance with Rule 70½.

There was a failure on the part of the defendant to comply with Equity Rule 29, 28 U.S.C.A. following section 723 which is also serious. Instead of complying with that rule, the defendant filed and presented a so-called special appearance and motion to dismiss on the grounds that the court did not have jurisdiction of the subject matter and that the suit was brought in the wrong judicial district. No defect in process or venue was shown and there was no basis for special appearance. The subject matter of the suit was within the jurisdiction of the District Court because it was a suit of a civil nature, the necessary diversity of citizenship existed and more than three thousand dollars was involved. Whether the plaintiff's suit should be entertained by the District Court was controlled by different considerations. In Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077, the Supreme Court quoted Baltimore & O.

R. R. Co. v. Wabash R. R. Co., 7 Cir., 119 F. 678–680, with approval as follows (page 81):

"It is settled that, when a state court and a court of the United States may each take jurisdiction of a matter, the tribunal whose jurisdiction first attaches holds it, to the exclusion of the other, until its duty is fully performed, and the jurisdiction involved is exhausted. * * * The rule is not only one of comity, to prevent unseemly conflicts between courts whose jurisdiction embraces the same subject and persons, but between state courts and those of the United States it is something more. 'It is a principle of right and law, and therefore of necessity. It leaves nothing to discretion or mere convenience.' Covell v. Heyman, 111 U.S. 176, 4 S.Ct. 355, 28 L.Ed. 390. The rule is not limited to cases where property has actually been seized under judicial process before a second suit is instituted in another court, but it applies as well where suits are brought to enforce liens against specific property, to marshal assets, administer trusts, or liquidate insolvent estates, and in all suits of a like nature. Farmers' Loan & Trust Co. v. Lake Street El. R. Co. [177 U.S. 51, 20 S.Ct. 564, 44 L.Ed. 667]; Merritt v. Steel-Barge Co., 79 F. 228, 24 C.C.A. 530, 49 U.S. App. 85."

Under Equity Rule 29, the defendant should probably have presented the facts and contentions upon which its resistance to the trial of the case in the Missouri court was based as part of an answer to the plaintiff's bill to be separately heard and disposed of before the trial of the case. But see Jackson & Sons v. Lumbermen's Mutual Casualty Co., 86 N.H. 341, 168 A. 895. Instead of that, the allegations appropriate to be made in such an answer were incorporated by the defendant into its so-called motion and special appearance. It was there alleged that the District Court of Kansas had reserved its jurisdiction over the property formerly belonging to the Federal Reserve Life Insurance Company and that the institution and prosecution of the suit by the plaintiff was an unwarranted and illegal interference with the administration of assets of the insolvent within the jurisdiction of the Kansas court. The decree and reinsurance agreement were attached and incorporated and it was charged that by reason thereof the plaintiff had no right to prosecute in the Missouri court the cause of action alleged by it. On the hearing the defendant offered and the court received in evidence and considered the Kansas decree and reinsurance agreement, and the question whether the plaintiff's suit should be entertained was decided by the court in the presence of the defendant's definite charge that the plaintiff had no right to prosecute the suit in the Missouri court and the showing made in support thereof, and after receiving briefs of counsel upon the questions involved.

If the defendant's failure to frame the issue properly in accordance with Equity Rule 29 had been called to the attention of the court in any way by the plaintiff, and if it appeared that the trial court had overruled objection to the procedure, an assignment of error based on such ruling might have been sustained in this court. But the record indicates clearly that the parties submitted the issue whether the court should entertain the plaintiff's case without objection to the procedure by which the issue was raised. The plaintiff made no objection to the court's considering all the allegations presented by the defendant or to the court's receiving in evidence and giving consideration to the Kansas court's decree and reinsurance agreement. The decision was not hastily made, but was argued and submitted in May on briefs presented later by counsel and decided in October following. The essential allegations and determinative proof upon the question whether the court should entertain the cause were before the court and were argued and considered, and we find that the decision and decree thereon are just and right. Equity Rule 19, 28 U.S.C.A. following section 723, provides that "the court, at every stage of the proceeding, must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties," and this court should not reverse for the error in the procedure here because it is manifest that it did not affect any substantial right of the appellant adversely to it. Equity Rule 19; Kelly v. U. S., 300 U.S. 50, 57 S.Ct. 335, 81 L.Ed. 507.

Affirmed.